DANIEL A. JONES and CHARLES M. CULBERTSON,

*v.*

THE COUNCIL BLUFFS BRANCH OF THE STATE BANK OF IOWA.

1. BILLS OF EXCHANGE — *acceptance.* A promise by the drawee to pay an existing bill is an acceptance, or in law amounts to an acceptance, whether the bill was taken upon the faith of the promise or not. A promise to any person interested in having a bill paid, inures to the benefit of the holder.

2. SAME. If at the time the drawee agrees to accept, the drawer also agrees that the net proceeds of certain property transferred to the drawee shall amount to a certain sum, the non-performance of the latter agreement furnishes no excuse for not accepting and paying the bill.

3. PRACTICE. A judgment will not be reversed because a demurrer has been improperly sustained to special pleas, if the matters set up in the special pleas were given in evidence under the general issue.

APPEAL from the Superior Court of Chicago.

This was an action of assumpsit, brought by the appellees against the appellants, on a certain bill of exchange which appellants had promised to accept. The plaintiffs below the recovered a verdict and judgment and the defendants appealed. The bill was drawn by Green & Stone on Jones & Culbertson, at Chicago, and payable in New York exchange, sixty days after date, to the order of J. D. Lockwood, cashier. The following agreement, drawn up by Culbertson, one of the appellants, and signed by Green & Stone, was produced by the appellants on the trial of the cause on notice from the appellee:

"MUSCATINE, IOWA, August 1, 1861.

"In consideration of Jones & Culbertson, of Chicago, Illinois, taking up Geo. C. Stone's draft on Jones & Culbertson, and in favor of W. H. Hubbard, of Washington, Iowa, for $2,800, due August 3, 1861, and J. A. Green's draft on Jones & Culbertson, and in favor of T. Harback, calling for

$3,000, due August 17th, 1861, and also paying draft drawn by us on Jones & Culbertson, and in favor of J. D. Lockwood, cashier, dated July 16th, 1861, at 60 days, calling for $2,050.25. For the above, and other considerations, we release, relinquish and transfer to said Jones & Culbertson, commission merchants, and resign to them all claim of whatsoever kind we have in said commission house, and release the said Jones & Culbertson from any and all further obligations, of whatsoever kind and nature with or through us, we only having had at any time the promise from Jones & Culbertson of a certain part of the profits arising from the commission house, in consideration of our influencing business to said commission house. We further say that we never have at any time put one dollar of capital stock into said house, our interest, as above stated, only being promissory by them for a part of the profits, if any should be made.

(Signed)                                    GREEN & STONE."

Messrs. ARRINGTON & DENT, attorneys for appellants, submitted the following points and authorities:

1. The draft offered in evidence by the plaintiff below, being payable in New York exchange was not a bill of exchange. Story on Bills, § 43. "A bill * * * to deliver bank notes, or any other paper medium, such as foreign bank bills, or drafts, or current bills, is not a bill of exchange in contemplation of law." Chitty on Bills, *132–3, and notes.

Nor does our statute in any way put this draft on the footing of either a promissory note or a bill of exchange.

It follows, that all the authorities relied upon by the counsel of the defendant in error, to show that the agreement between the appellants and Green & Stone amounted to an acceptance by the appellants, are inapplicable. Because the cases cited to prove this are cases relating only to bills of exchange, and not to instruments like the order in question. And even as to such cases, concerning the effect of

promises to accept bills of exchange, it is submitted, that the rule of the American courts still stands as it was announced by Chief Justice MARSHALL, in *Coolidge* v. *Payson*, 2 Wheat. 66–75, that a writing made "within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who afterwards takes the bill on the credit of the" writing, "a virtual acceptance, binding the person who makes the promise;" and, in the language of the same high authority, "that the prevailing inducement for considering a promise to accept as an acceptance, is that credit is thereby given to the bill." Edw. on Bills, 407; 3 Kent's Com. 85; *Ontario Bank* v. *Worthington*, 12 Wend. 593;—which was the case of an existing bill—id. 599; *Strocher* v. *Cooper*, 1 Speer, 349; *Evers* v. *Mason*, 10 Johns. 207, 214; *Goodrich* v. *Gordon*, 15 id. 6, 12; 1 Peters, 264; 4 id. 112; 1 Bald. 38, 45; 3 McLean, 462; 2 Wend. 547; 5 id. 415, 417; 11 Metc. 5; 7 Barr. 401, 407; 2 Dana, 95; Blatchf. 355; 1 Story, 22; 2 Amer. Lead. Ca. 202–217.

The English cases make a distinction between promises to accept existing bills, and those referring to bills non-existing; because, argues Baron PARKE, "in order to constitute an acceptance, there ought to be a bill in existence which can be accepted." *Bank of Ireland* v. *Archer*, 11 M. & W. 385. And the learned judge declares with emphasis, "that reason points this out."

But one may be permitted to doubt whether reason points out any distinction of the sort. The idea is this, " you cannot accept that which is not present in time." But the American jurist may well reply, "how, then, can you accept that which is not present in space?" For the apparent, and only apparent, physical impossibility is the same in both cases.

Indeed it is the principle of equitable estoppel which converts a promise to accept into a virtual acceptance. It is because a man should not be allowed to gainsay any act of his which has influenced, and was calculated to influence the conduct of another, and such as would work a damage to the

other, were the act to be disowned. And this principle as clearly applies to the case of non-existing bills as to that of existing bills; since the injury must be equal to a person who takes any bill on the faith of an antecedent promise by the drawee, whether such promise be uttered before or after the date of the bill, nor can human ingenuity make a discrimination between the two cases. Hence "reason" points out the American rule as founded in true logic, as it irreversibly condemns the English distinction as a mere fiction.

It is almost needless to remark that under the American rule, and even if the order in question had been a bill of exchange, there was no acceptance in the present instance, because the supposed promise was not made until after the plaintiff became holder of the bill.

Much less can the agreement be held to be an acceptance of the order held by the plaintiff, since it does not stand on the same favored footing with bills of exchange.

The writing relied upon by the plaintiff merely recites a transaction between the appellants and Green & Stone, for the exclusive benefit of the parties to it, and having no reference to the plaintiff, and evidently never was intended to go to the plaintiff, nor to induce any credit with the plaintiff, nor to constitute any contract between the defendants and the plaintiff. It was a writing signed by Green & Stone alone, and delivered to one of the defendants, to show a release by Green & Stone of their interest in the commission house of Jones & Culbertson, and was produced by the latter at the trial on the call of the plaintiff's counsel. Therefore the case stands upon the verbal agreement between the defendants and Green & Stone, under which the defense of a failure of consideration stands admitted by the demurrer to pleas 3, 4, 5, 6 and 9 to 13, and was proved on the trial. The contract was made upon the promise and assurance of Green & Stone that Jones & Culbertson should realize from the oats they then held for Green & Stone, enough, with the share due Green & Stone on account of the assets and net profits of the commission house, to pay two other drafts previously accepted by the defendants,

amounting to $5,800, together with the draft held by the plaintiff. Both Green & Stone and Jones & Culbertson, it is fairly to be presumed, thought enough could be so realized by Jones & Culbertson, and clearly, from the testimony, Jones & Culbertson were not required to pay more than they should so realize. The result was, that when Jones & Culbertson paid the other two drafts, nothing was left of this consideration to be paid to the plaintiff.

If the contract was made under a mutual mistake, as is not impossible under the evidence, all parties standing on the same footing in which they stood at the time it was made, the law does not oblige the defendants to execute it when the consideration has failed. They can defend against it on the same ground on which they could recover back the money, if they had paid Green & Stone the amount of their draft under the mistaken supposition of having that amount on hand for them. *Mowatt* v. *Wright*, 1 Wend, 360; *Moses* v. *McFarland*, 2 Burr. 1005; 3 Kent's Com. 468, 477, 491.

We therefore maintain that the defense set up by the pleas just adverted to was complete, and that it was likewise fully established on the trial.

2. The plaintiff was not entitled to any recovery under the pleadings. As to the special counts this is so, even if no defense whatever had been made; for each of the six special counts misdescribes the order held by the plaintiff. First, in averring that it was a bill of exchange. Secondly, in stating it as being generally payable in money, and not in New York exchange. And each of the same counts, except the fifth count, totally misdescribes the promises of the defendants in this, to wit, that they aver such promise to have been to pay two drafts before then drawn by Green & Stone, one for $3,000 in favor of the Muscatine branch, and the other in favor of the Washington branch of the State Bank of Iowa, when, in fact, the promise was not to pay any such drafts, but instead thereof to pay a draft drawn by J. A. Green, and a draft drawn by G. C. Stone, both of them in favor of other parties than the banks named.

And the 5th count, besides erroneously complaining against the defendants as acceptors of a bill of exchange, payable generally in money, states the acceptance to have been made August 1, 1862, that is, after the commencement of the suit.

This disposes of the special counts, in all of which the alleged promise is misdescribed in more than one essential particular; and hence the proof did not support the allegations.

As to the common counts, there could be no recovery on these, because there was no proof of any of the items on which they are assumed to be based. There was no money lent and advanced by the plaintiff; and as to the other specifications in the count, there was other defect of proof. If the undertaking of the defendants had been by note or bill, and such note or bill had been offered under the common counts, then, presumptively, the consideration would be deemed adequate; and yet, this would be a mere presumption. But in a case of the character of the one under consideration, where there is nothing from which a consideration would be presumed, even this rule could not apply, and positive proof of the items alleged to be due from the defendants was necessary; and the defendants, on the other hand, were at liberty, under this general count, "to prevent the" plaintiff "recovering more than the real, inherent value of the consideration." 2 Smith's Lead. Ca., 5th Am. ed., page 49, notes to *Cutter* v. *Powell.* And the real, inherent value of the consideration in the case amounting to nothing upon payment of the two bills for $5,800, the plaintiff could not recover any thing.

Further, as to common counts, in illustration of this view, we refer to *Eddy* v. *Smith,* 13 Wend. 488; *Moses* v. *Macfarland,* 2 Burr. 1005; 3 Bouv. Inst. 224–5.

Hence, in every point of view, the rulings of the court below in settling the pleadings and in finding for the plaintiff, were erroneous.

Messrs. Walker & Dexter, attorneys for the appellees.

Mr. Justice Beckwith delivered the opinion of the court:

This is an action of assumpsit to recover the sum of money mentioned in a draft dated July 16, 1861, drawn by Green & Stone on the appellants, alleged to have been verbally accepted by them, but protested for non-acceptance. The defense was, that the promise of the appellants to accept did not constitute an acceptance; that such promise was obtained by fraud, and that its consideration had failed. On the trial the plaintiffs offered in evidence the draft and a written agreement of Green & Stone, dated August 1, 1861, by which they transferred to the appellants all their interest in certain property and claims for commissions, in consideration of the appellants undertaking to pay the draft in question. The plaintiffs also offered evidence tending to prove that the appellants promised Green & Stone that they would accept and pay the draft, and that the appellees, after they had taken it, were informed of this undertaking. A promise by the drawee to pay an existing bill, is an acceptance, or, in law, amounts to an acceptance, whether the bill was taken upon the faith of the promise or not. A promise to any person interested in having a bill paid, inures to the benefit of the holder. These principles were settled in the time of Lord ELLENBOROUGH, and a reference to any of the text books will furnish the names of a great number of cases in which they have been acted upon in England and in this country. They are too well settled to be discussed at the present day. The court below found there was no fraud in obtaining the promise, and we are entirely satisfied with its finding. The appellants' agreement to accept the bill was for the benefit of its holders; and the agreement of Green and Jones that the net proceeds of the property and the commissions transferred to the appellants should amount to a certain sum, was solely for their benefit. The non-performance of the latter agreement furnishes no excuse for not accepting and paying the bill. The agreements were not intended to be dependent on each other. The undertaking on the part of the appellants was, that they would pay the bills when they became due. They were to convert the property transferred to them into money at the best price they could obtain for it, and ascertain the amount of the

commissions; and if these sums did not amount to sufficient to pay the bills which they undertook to pay, Green and Jones undertook to pay them the difference. Such was the legal effect of their agreement. We do not deem it necessary to make a critical examination of the special pleas filed by the appellants. All the matters set up in them were admissible in evidence under the general issue and on the trial were given in evidence under it. The appellants have had all the benefit which they can derive from the facts; and if the demurrer to some of the pleas was improperly sustained, we should not reverse the judgment after the appellants have had the full benefit of their defense under the general issue. *Atlantic Ins. Co.* v. *Wright*, 22 Ill. 462.

Perceiving no error in the record, the judgment of the court below will be affirmed.

*Judgment affirmed.*