## THE ATLANTIC INSURANCE COMPANY, Appellant, *v.* EDWARD WRIGHT, Appellee.

### APPEAL FROM COOK.

Where the same proof may be offered under the issues in a case, as might be offered under an unanswered plea, it is not ground for a reversal, that a plea is so unanswered.

A verdict which finds the issue for the plaintiff, and assesses his damages, is sufficient.

Where the representatives of an insurance company, express satisfaction with the preliminary proofs of a loss, as offered by the insured, they cannot subsequently withdraw that approval, but will be bound by it.

If the agent of an insurance company is informed of all the facts connected with the interest of the assured in the property described in the policy, and does not require a statement thereof, the company will be bound by his acts, and cannot avoid the policy because the interest of the insured varies from the conditions stated in the policy, but will be estopped by the acts of the agent.

THIS was an action of assumpsit, brought by Edward Wright, against the Atlantic Insurance Company, upon a policy of insurance. The declaration contains three counts. The first count sets forth in *hæc verba,* a policy of insurance against loss or damage by fire, to the amount of $5,000, upon Wright's five story brick (stone front) building, situate on the north side of Lake street, Nos. 114 and 116, in Chicago—and all the conditions thereof. It then alleges that Wright was the absolute owner of the property insured, the destruction of the same by fire, and a compliance by him with the provisions of the policy on his part to be complied with.

The second count alleges that the defendant, on, etc., by its policy, signed, etc., made insurance upon the five story brick building of the plaintiff, and then sets forth the policy and its conditions by a reference to the first count. It alleges that the building insured was destroyed by fire, and a compliance with the provisions of the policy on the part of the plaintiff. This count does not, except as above stated, allege any interest in the plaintiff, further than to state that by the destruction of the building insured, he was damaged and sustained loss, and the amount thereof, and that he made proof of such loss and damage satisfactory to the defendant.

The third count is for money had and received, lent and advanced, and paid, laid out and expended.

The defendant pleaded, first, the general issue; second, that the plaintiff was not the owner of the property insured *at the time of the loss;* third, that the plaintiff, for the purpose of procuring the policy of insurance, falsely and fraudulently represented that he was the owner of the property insured, and

that by means of such false and fraudulent representations the policy was procured; fourth, that the plaintiff was not the owner of the property insured *at the time of the execution and delivery of the policy.*

To the second, third and fourth pleas, the plaintiff replied *de injuria.*

A fifth plea appears in the record, and is unreplied to. This plea alleges that the plaintiff had no insurable interest in the property insured, at the time of the execution and delivery of the policy, and that the plaintiff fraudulently concealed that fact from the defendant.

On the trial, the plaintiff introduced the policy of insurance set forth in first count, and it appeared in evidence that the plaintiff, on the 23rd day of November, 1854, conveyed the west thirty feet of the east sixty feet of lot six, in block seventeen, in the original town of Chicago, to Timothy Wright and Ebenezer Peck, in trust, first to lease the same, and to collect, take and receive the rents, issues and profits thereof, and out of the same to keep the premises in good order and repair, and properly insured, and pay all taxes, assessments and charges that might be imposed thereon; second, to pay the residue of said rents, issues and income to Sarah L. Wright, wife of Edward Wright, upon her sole and separate receipt, to the intent that she may enjoy, possess and have the same, free from the control, interference and liabilities of her husband, during his and her natural life; third, to convey the premises, in fee simple absolute, to said Sarah L. Wright, her heirs and assigns, upon the death of Edward Wright, in case she should survive him, in lieu and instead of dower, but in case the said Sarah L. Wright should not survive the said Edward Wright, then the premises were to revert to him and his heirs and assigns.

It also appeared that the plaintiff had sold four feet off from one side of the lot mentioned in the above deed, and purchased two feet of the lot adjoining it on the other side, and that the building insured was upon and covered the unsold portion of the lot mentioned in the above deed, and the two feet of ground thus purchased, adjoining it.

It further appeared that the building insured was built in the year 1856, having been commenced in March, and completed in October, of that year. That it was built by the plaintiff, and paid for by him with his own money. That he made the contracts for the work and labor, and materials furnished, in his own name. That he employed the architect and workmen, and paid them. That the estimates were made out in his name, and that he took receipts in his own name for all moneys paid out in the construction of the building, amounting to $27,953.00.

That the building was built with the knowledge and consent of the trustees. When the building was completed, in October, 1856, the plaintiff rented it, and afterwards, until the building was destroyed by fire, received all the rents for his own use, and gave receipts therefor in his own name. That the trustees knew of the plaintiff's collecting the rents and appropriating them to his own use, and never interfered in any way, or expressed any dissent, and in fact were not consulted, and never had anything to do with the building, or with the rents thereof. That about the time the building was completed, the three policies of insurance mentioned in the policy of the defendant were effected in the names of E. Peck and T. Wright, but by whom they were effected did not appear; and when they expired, they were renewed by the plaintiff's agent, and the premiums paid with the plaintiff's money. That about October, 1856, the plaintiff and his wife went to Europe, where they remained until some time after the destruction of the building, during which time the plaintiff was represented in Chicago by Charles F. Peck, his duly authorized agent.

While in Europe, the plaintiff directed his agent, Charles F. Peck, to effect $5,000 more insurance upon the building, in some reliable company. The agent applied to Mr. A. H. Van Buren, the agent of the Providence Washington Insurance Company, and stated to him that he wished to effect an insurance for $5,000, gave him what information he could, and requested Mr. Van Buren to look at the premises and examine them for himself, and call on him if he wanted any further information. Mr. Van Buren examined the premises, and shortly after delivered to the plaintiff's agent a policy of the Providence Washington Company, upon the building, for a year, for $5,000, and the agent paid him the premium out of the plaintiff's money. At the time the agent effected this policy, he told Mr. Van Buren about the title to the property, and particularly told him that they called the store Mr. Wright's store, but that strictly speaking perhaps it was not so, as the property was held in trust for his wife. Mr. Van Buren replied that that made no difference, and that the policy was all right.

Some two or three months after this policy was effected, Mr. Van Buren called on the plaintiff's agent, and stated to him that he had too large a risk in that neighborhood, and asked him if he would change his policy, saying that he had three or four other good companies, mentioning, among others, that of the defendant. The plaintiff's agent consented to exchange the policy of the Providence Washington Company, which he then held, for one of the defendant's company. The plaintiff's agent at that time asked Mr. Van Buren if it was necessary for him

to take any further steps in the matter, in order to have it all right. Mr. Van Buren replied, no; that he was acquainted with the facts in the premises, and would fix it all himself, and hand the new policy to Mr. Peck, the plaintiff's agent, in a few days. Although the plaintiff's agent understood Mr. Van Buren as representing himself as the defendant's agent, yet it appears that he was not their regular agent. He was an insurance broker, and as such had had dealings with the defendant. Mr. Van Buren made out the diagram and application given in evidence, and sent it to the defendant, accompanied by a letter, dated March 17, 1857, in which Mr. Van Buren says: " I hand you a risk of $5,000, per diagram and survey, which I will thank you to send me a policy for, viz: Edward Wright, $5,000 1 year $a$ $1\frac{5}{100}$, $52.50. As other tenants go into the upper stories, an additional rate will be charged. I have received two policies from you through the Arctic Insurance Co., and as I am constantly obliged to send to your city for policies, I will be glad to correspond with you if agreeable. The writer had the pleasure of seeing you in New York, in 1853, when he lived in Cincinnati."

The plaintiff's agent never saw the diagram, application or letter, until the same were produced at the trial in the court below. Within a few days Mr. Van Buren received from the defendant, the policy in suit, and shortly after exchanged it with the plaintiff's agent for the policy of the Providence Washington Company. The premium was paid to Mr. Van Buren by the plaintiff's agent when he received the policy, and out of the plaintiff's money, and Mr. Van Buren refunded to him the premium for the unexpired term of the policy of the Providence Washington Company.

Nothing further transpired until after the destruction of the building by fire, on the 19th day of October, 1857.

On the same day the premises were destroyed, the plaintiff's agent gave written notice to Mr. Atwater, the agent of the defendant at Chicago, of their destruction; afterwards, on the 23rd day of October, 1857, the plaintiff's agent furnished to Mr. Atwater proofs of loss, which were produced and read on the trial. The witness, C. F. Peck, having stated that Mr. Atwater was the agent of the defendant, and that the proofs were furnished by the witness to him, and by him received as such agent, was asked " what did the agent, Atwater, say about the proofs at the time of the delivery of them ? " This question was objected to, but the court overruled the objection, and the witness testified that he took the proofs to Mr. Atwater in his office, handed them to him and asked him to read them and see if they were sufficient; that the witness then went out of the

office for a moment, and when he returned he asked Mr. Atwater if he had read them, and if they were satisfactory. Mr. Atwater replied that he had read them and that they were satisfactory. The witness testifies that he then stated to Mr. Atwater that he wished to have the proof correct, and if it was not so, wished to know it, to which Mr. Atwater replied that it was correct.

Several days after the fire, Mr. Cocks, the president of the defendant, was at Chicago, and had an interview with the plaintiff's agent. Mr. Cocks then stated that the defendant had never received the premium, but that it would make no point on that, as it had been paid to Mr. Van Buren; that Mr. Van Buren was not their regular agent, but that he had acted as their agent in that matter, and written to them for the policy, and referred them to the Arctic Insurance Company, and that they made inquiries of that company, and became satisfied with regard to him. Mr. Cocks said the loss was not $20,000, and that the building could be rebuilt for $18,000 or $19,000. He was shown the vouchers for the expenditures, and also a list of them in a book. He picked up the vouchers, but did not examine them, and ran his eye over the list of them. He said he was satisfied the plaintiff below had acted in good faith; that his company had no fault to find with the proof, but he was not satisfied with the question about the trust deed, and was unwilling to pay anything until that matter was settled. It appears that one or two of the other companies having insurances upon the property, desired affidavits of some master builders in regard to the value of the property, and they were procured, and are incorporated into the record.

It also appeared that on the 23rd day of October, 1857, Ebenezer Peck, one of the trustees, made an affidavit for the purpose of making the preliminary proofs under the policies effected, in his and Timothy Wright's name before mentioned, which was read in evidence on the trial in the court below, the court overruling the plaintiff's objection thereto. In this affidavit E. Peck stated that he held the property with Timothy Wright, as trustees for Sarah L. Wright.

It further appeared, that the plaintiff received the $15,000 insured upon the building by the other insurance companies, and that the building was worth over $20,000 when destroyed.

On the 4th day of December, 1857, the defendant's secretary wrote to the plaintiff that the agent of the company, at Chicago, advised them of plaintiff's calling on him in relation to the late loss in that city. If desirable, the plaintiff might address them in New York.

On the 14th day of December, 1857, the plaintiff wrote in reply to the defendant's secretary, that he was anxious to have the loss, covered by their policy of insurance, adjusted as soon as possible. That the sixty days after notice and proof of loss would expire on the then 23rd inst., and therefore $5,000 would be due him on that day, and he would be glad to know in what manner the company would pay it.

On the 18th day of December, 1857, the defendant's secretary wrote in reply to the plaintiff, that they had received what purported to be proofs of loss on the property destroyed at Nos. 114 and 116 Lake street, but that the proofs so received were not made clearly, nor were they in accordance with the requirements of their policy. That they must ask a new set of proofs, made in accordance with article 9th of the conditions of insurance therewith inclosed for his guidance. That they also found the proofs of loss on the same building made to the London and Liverpool, Garden City and Ætna Companies, were made out different from theirs and to another party, and that these companies had settled their loss, not deeming (the defendant) held as co-insurers with them. That in the above remarks and requirements proposed to the plaintiff, they wished him to understand their object was to ascertain if their company had made a legitimate loss, and if so, to whom they were bound under the policy to pay that loss, and requested a reply by letter, and stated that they should be pleased to see the plaintiff in person in New York, relative to the matter.

On the 28th day of December, 1857, the plaintiff wrote in reply to the defendant's secretary, that he had no objection to make such proofs of loss on his policy as might be necessary, and as the facts would justify. That Mr. Cocks, when in Chicago, and Mr. Atwater, their agent, had both expressed themselves satisfied with the proof offered the company, which was, as the plaintiff was informed, as nearly similar to that which was accepted by the other companies as it was possible to make it. That he did not know what fact the company desired to have further elucidated, which he could supply, and that if he knew what the company wished, he would endeavor to comply with it. That Mr. Cocks was fully informed of everything connected with the insurance while he was in Chicago, and that the plaintiff was at a loss to know why the company delayed payment. That the insurance was made with the company under circumstances of which the company was fully advised, and in perfect good faith in every particular, and that the plaintiff could see no good reason for procrastinating the adjustment of his loss. These letters were in evidence on the trial.

The plaintiff's counsel asked for the following instructions, which were given:

1. If the jury shall believe, from the evidence, that the plaintiff, with the consent of the trustees, took possession of the land, and, for the purposes of trade, built and paid for the building with his own money, and upon its completion took possession of the building and leased the same in his own name, and thereafter received the rents to his own use, and that all of these acts were done with the previous and continued knowledge and consent of E. Peck and Timothy Wright, the trustees, and without objection or interference on their part, to the time the building was burned, they will be at liberty to find that the plaintiff was the owner of the building, unless they shall further believe that said building was erected with an intention that it should be for the benefit of the trust created by the deed of the plaintiff to E. Peck and Wright, for the benefit of Sarah L. Wright.

2. That in determining whether the building was erected with an intention that it should be the property of the trustees, or his own property, the jury may take into consideration evidence tending to show whether the building insured was built and paid for with his own money, and whether, upon its completion, he took possession of the building and leased the same in his own name, and received the rents to his own use, and whether, after the fire, he received the insurance money thereon, and all other evidence in the case, (if any), conflicting with these facts and tending to establish the contrary; and if, from the evidence, the jury shall believe that the plaintiff built the building with an intention that it should be his own property, and that the trustees knew of this intention, and consented to his taking possession of the land, and made no objections to the acts of the plaintiff, but consented thereto and approved thereof down to the time of the fire, they will find that the plaintiff was the owner of the building insured, and was seized of some interest in the land sufficient to enable him to assert his claim to the building as his property.

3. That if the jury shall believe, from the evidence, that the plaintiff furnished preliminary proofs of the loss, and that such preliminary proofs were acknowledged by the agent and president of the defendant to be satisfactory, it was the duty of defendant, if it desired further preliminary proofs, to request the plaintiff to make the same within a reasonable time, and to point out specifically the further proof required, and if the evidence shows a failure on the part of the defendant in this respect, the law precludes the defendant from making any objection to the sufficiency of such preliminary proofs.

On the trial the defendant asked the following instructions, which were refused:

6. That if the jury are satisfied, from the evidence, that the defendants, under the representations of the plaintiff or his agent acting in the matter for him, executed the policy in the declaration mentioned, insuring the property therein named as the sole, legal and absolute property of the plaintiff, and that in fact he was not the owner thereof, and that the plaintiff and his said agent, knowing that fact, concealed from the defendant that he owned but a small fraction of said property, or that he owned but a small part of said property, and the contingent interest or remainder, after the death of a third person, in the residue of said property, or that he held and owned but an equitable title to such remainder, and owned absolutely only a small portion of said property; or, if the jury believe that the plaintiff owned any interest less that an absolute or fee simple interest, and so as aforesaid, concealed that fact from the defendant, and the jury believe that such concealment was material to the risk of said defendants in said insurance, or that the knowledge of the want of such absolute property in the plaintiff would have enhanced the premium on said insurance, that then the plaintiff is not entitled in this suit to recover for his said losses on the said policy.

13. That if the jury believe, from the evidence, that the property mentioned as insured in the policy in the declaration set out, was consumed and lost by fire, as in said declaration is alleged, that then, unless they are further satisfied, by evidence, that the plaintiff gave notice in writing of such loss to the defendant, and delivered as particular an account of his loss and damage as the nature of the case would admit, signed by his own hand, and accompanied the same with his oath or affirmation, declaring said account to be true and just, the plaintiff cannot recover on the said policy in this suit for his alleged loss.

20. If the jury believe, from the evidence, that the three policies named in the policy in question, were insurances upon the building in question as the property of Timothy Wright and E. Peck, as trustees for Sarah L. Wright, *and not as the property of Edward* Wright, the plaintiff, as represented in the policy in question, then such representation was false, and vitiates the policy in question, and the plaintiff cannot recover.

21. If the jury believe, from the evidence, that Van Buren obtained the policy in question by or under an arrangement between him and plaintiff's agent, for Mr. Wright, and that Van Buren testified truly, he was not the agent of defendant, and this was the only policy he had personally obtained from the defendant, then he was not, in fact, defendant's agent, but was

agent of Wright, and his failure to pay over the money to defendant is Wright's failure.

23. That if the jury believe, from the evidence, that one A. H. Van Buren proposed to the agent of the plaintiff to get a policy for $5,000 of the defendant on the property, for the loss of which the plaintiff here seeks to recover, and that the agent of the plaintiff consented thereto, and authorized the said Van Buren to procure said policy, and that said Van Buren in consequence thereof, wrote on to the defendant, requesting him to forward to him such policy, and that defendant did accordingly forward to Van Buren the policy mentioned in the declaration; and if they further believe, from the evidence, that plaintiff accepted and received said policy, and gave the amount of the premium on said insurance to said Van Buren, to be paid to the defendant, and that this was all the connection of any kind the said Van Buren had ever had with the defendant, and that Van Buren has never paid the said premium to said defendant, and that no other payment, or offer of payment, has been made of said premium, that then such facts, and the delivery of the premium as aforesaid, to Van Buren, under the circumstances aforesaid, do not amount to a payment of the said premium to the said defendant, as is required by the second clause or section of the " Conditions of Insurance," annexed to the policy declared on here, and that by virtue of said " Conditions of Insurance," the said insurance is not binding until the said premium has been actually paid.

The defendant also asked the following instructions, which were given as amended — the amendments consisting of interlineations being in *italic*, and those of erasures being contained within brackets.

3. That if the jury were satisfied, from the evidence, *that the plaintiff was not the absolute owner of the building insured,* and that the plaintiff, or his agent acting for him, in their application for, and their representations in, procuring the defendants to execute the policy declared on in this suit, concealed from the defendants the true amount and character of his interest ·in the property insured in said policy, that then in this action on the policy declared on, the plaintiff cannot recover for his alleged losses.

5. That if the jury are satisfied, from the evidence, that the defendants executed the policy in the declaration mentioned, under the belief, derived from the representations of the plaintiff or his agent in the matter, that the plaintiff was the owner in absolute property of the *whole of said property* insured, *and that in fact he was not the owner thereof,* and that the plaintiff and his said agent knowing that fact, concealed from the defendant

the fact that he owned but a small portion, or but a contingent or reversionary interest, *if such shall be the evidence,* that then the plaintiff cannot recover for his alleged losses in this action upon said policy.

9. That if the jury are satisfied, from the evidence, that the premium on said insurance or policy mentioned in the declaration, has not been paid to the defendants, *or their authorized agent,* that then the plaintiff cannot recover under said policy in this action, for his alleged losses.

10. That in case of the loss of property insured, as set forth in the declaration, it was the duty of the plaintiff, by virtue of said policy, if he desired to recover for said loss of the defendant, to set forth in the preliminary proofs of such loss, the names of the respective owners of the said property insured by said plaintiff, together with their respective interests therein, and that unless the jury are satisfied, from the evidence, that the plaintiff did so set forth in the said preliminary proofs, he is not entitled to recover in this suit, *unless the jury shall find that the defendants were satisfied with the proofs furnished, or did object thereto within a reasonable time.*

15. If the jury believe, from the evidence, that the plaintiff in his preliminary proofs, made and sent to the defendants, did not set forth and show the plaintiff's interest in the property insured, and failed to make such proof when required by the defendant so to do, and did not so do before this suit was brought, then the plaintiff cannot recover in this action, and they ought to find for the defendant, unless the jury shall find that such proofs were waived, and that there was an unreasonable delay on the part of the defendant in requiring additional proofs.

16. If the jury find, from the evidence, that a full disclosure of the actual title of the plaintiff in the premises, as it existed at the time of the application, was material to and would have increased the premium, or prevented the defendant from giving him any policy thereon, [and that no other disclosure of the same was made than the one given in evidence] then there was a material concealment which avoids the policy declared on, and the plaintiff cannot recover.

18. If the jury believe, from the evidence, that the plaintiff, at the time the policy was made, had a less estate than the *absolute ownership* of the whole lot covered by the building in question, *and no separate, legal and absolute ownership in the building,* and the same was not disclosed in the application of the plaintiff to the defendant for insurance, they must find for the defendant.

There was a judgment for plaintiff below for $5,000 and costs, and the insurance company appealed.

B. S. Morris, and Scates, McAllister & Jewett, for Appellant.

Hosmer & Peck, and Beckwith, Merrick & Cassin, for Appellee.

Walker, J. The first assignment of error, questions the judgment of the court below, because appellant's fifth plea was unanswered. In that plea it is averred, that appellee had no insurable interest in the property, which fact was fraudulently concealed from them when the policy was granted. Whether it was error to proceed to trial without a replication to this plea, depends upon the character of the other issues in the case. There was in the first count of the declaration, an averment that appellee was the absolute owner of the property insured, and in the second count, an averment that the company " made insurance upon the five story, stone front, brick building of plaintiff." When appellee filed the general issue, every material averment in the declaration was, by it, put in issue. And to recover, it was necessary that each should be proved. And when proved, the appellant had a right to rebut the evidence, and defeat a recovery. Although the policy might *prima facie* prove these averments, the proof was subject to be rebutted by other competent evidence. It will be observed, that the same issue was presented by the declaration and plea of non-assumpsit, that would have been formed by traversing the averments of this plea. No right was lost to the appellant by proceeding to trial without its being answered, and none could have been gained by forming an issue, which already existed in the record. When the issue was formed by the general issue to the declaration, the same evidence was admissible under it that could have been given under an issue on the plea.

It may be true, that the verdict in this case is not in all respects strictly formal, but under our statute of Amendments and Jeofails, if it is substantially good, it will suffice. It finds the issue for the plaintiff and assesses his damages. Such has been repeatedly held to be substantially a good verdict, under the statute, and it was not error to render a judgment upon it.

It was urged as a ground for reversing this judgment, that the preliminary proofs do not disclose the names of the owners, and their interest in the property destroyed, as required by the printed specifications annexed to the policy. The evidence shows that when they were presented by appellee's agent, he

inquired of the agent of the company if they were sufficient, to which he replied, they were satisfactory and correct. And that the president of the company also stated that, " the company had no fault to find with the proofs, but he was not satisfied with the question about the trust deed." If there existed any informality in the preliminary proofs of loss, it was expressly waived by these admissions of the president, and general agent. This court, in the case of *The Peoria Fire and Marine Insurance Company* v. *Lewis et al.*, 18 Ill. R. 553, say that, " When notice is given and accounts and proofs are furnished of a loss — and the company make objection to making payment — all grounds of objection that might be taken, and are not, are considered as waived, and the company can afterwards insist, only upon the objections then taken. The authorities are abundant and conclusive to this point." In the case under consideration, there was an express, and not an implied waiver of objections to the proof, as there was in that case. That decision goes further than it is necessary to go in this, and it is conclusive as to all exceptions, which might have been urged against the sufficiency of the preliminary proofs of loss.

This then leaves for consideration, the question, of whether the failure of appellee's agent to give a written description of his interest in the property insured, avoids this policy. The requirement of the third condition, annexed to the policy, is this : " If the interest in the property to be insured be a leasehold interest, or other interest not absolute, it must be so represented to the company, and expressed in the policy, in writing, otherwise the insurance shall be void." The policy describes the property insured as appellee's " five story brick (stone front) building, occupied on the first floor as a retail dry goods store, and in the second story as a wholesale millinery store," etc. From the evidence contained in the bill of exceptions, it appears that the president of the company stated, that although Mr. Van Buren was not their general agent, he had acted as their agent in this matter, and as the premium had been paid to him, although he had not paid it to the company, they would not object to paying the loss on that ground. From this admission it appears that the company regarded Van Buren as their agent in effecting this insurance. And although he was not a general agent, there was no limitation of his powers, for all purposes, in effecting this insurance, as appears by the admission made by the president of the company. The admission did not limit his agency to the receipt of the premium, and delivery of the policy, to the insured. It is sufficiently comprehensive to embrace all the powers of a general agent, in procuring the insurance of this property, and this is

31

the import of the admission. If they regarded themselves bound by his receipt of the premium, because he was their agent, no reason is perceived why they should not be equally bound, by all of his acts, which a general agent might do, in effecting this insurance ; such as making the survey, application, and representation of the ownership of the property, and the interest which the applicant had in it. That those acts may be performed by a general agent of the company cannot be questioned. And when he upon his own examination, and from his information, makes such survey, and description, there can be as little doubt, that the company are bound by it, whether correct or incorrect. This condition only has application to representations made by the assured, and not to cases where the company rely upon their own knowledge of facts, and dispense with information from the assured. When the application is prepared, signed and presented by the owner, the company have the right to rely upon its correctness, and if incorrect in any material part, it avoids the policy. But when the assured fully discloses to the company or its agent the necessary facts, or they are otherwise cognizant of them, and they dispense with any act on his part, they are estopped from denying the description they have adopted, in the policy. If from all the facts of the case, they erroneously determine that the insured has one kind of interest in the premises, when he has another, they cannot be heard, to say, that they were mistaken, and by that means escape the liability they have incurred.

The evidence in this case shows, that the agent of appellee, when he procured the policy in the Providence Washington Company, fully informed Van Buren of the title and ownership of this property. And when he proposed to have that risk transferred to this company, appellee's agent consented, and he inquired, if it was necessary for him to do anything to effect it, and was informed by Van Buren that it was unnecessary, as he was familiar with the facts, and would have the risk transferred. He made out the diagram and application and forwarded them to the company, and upon his application the policy was issued, and forwarded to him, and was by him delivered to appellee's agent. He determined from all the facts, that appellee was the owner of the house, and was not a lessee, but held an absolute interest in it. It is described in the policy as such, and not as a leasehold, or less interest. That he so regarded it, is manifest from the fact, that when he was informed of all the facts, at the time he granted the policy for the Providence Washington Company, he gave it in the name of appellee, and not of the trustees. When the agent of the company, undertook to make the survey, the application, and

representation of the interest, which the assured had in the property, and dispensed with any acts of the assured, and acted upon his own knowledge of the facts, the company ratified his acts by granting the policy. They are bound by his acts as their agent, and if he was mistaken in his representations to them of the ownership, they have no right to insist upon it as a defense to a recovery.

We perceive no error in this record for which the judgment of the court below should be reversed. It must therefore be affirmed.

*Judgment affirmed.*