THE MICHIGAN SHINGLE COMPANY v. THE STATE INVESTMENT AND INSURANCE COMPANY OF SAN FRANCISCO.

*Fire insurance—Knowledge of agent—Promissory warranty— Waiver—Estoppel.*

Where an insurance agent, with full knowledge of the exact amount of continuous clear space kept and to be kept by the assured between the insured property and adjacent mills, decides that such clear space, in consideration of the situation of the prop-

erty and its surroundings, is equivalent to a certain number of feet, as ordinarily understood by insurance men, and inserts that distance in a clause in the policy by which the assured warrants that such clear space shall be maintained, and receives the premium, the rate of which is fixed in view of the premises, the company is estopped from avoiding the policy under the claim that the warranty as to clear space must be literally construed, without regard to the knowledge of the agent as aforesaid.

Error to Muskegon. (Dickerman, J.) Argued October 5, 1892. Decided December 24, 1892.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinions.

*Bunker & Carpenter* and *R. W. Barger*, for appellant.

*Smith, Nims, Hoyt & Erwin,* for plaintiff.

DURAND, J. This case was brought to recover upon an insurance policy, by which the defendant had insured the plaintiff upon certain lumber, lath, and shingles, owned by it, or held in trust or on commission, or sold but not delivered, piled on its mill docks Nos. 3, 4, and 5, at Muskegon, Mich. Among other things, the policy contained a clause as follows:

"Warranted by the assured that a continuous clear place of 150 feet shall hereafter be maintained between the property hereby insured and any wood-working or manufacturing establishment, and that said space shall not be used for handling or piling of lumber thereon for temporary purposes, tramways, upon which lumber is not piled, alone being excepted; but this shall not be construed to prohibit loading or unloading within, or the transportation of lumber and timber products across, such clear space; it being specially understood and agreed by the assured that any violation of this warranty shall render this policy null and void."

Within a few days after the policy was given, the insured property was destroyed by fire. At the time the policy was issued the agent who insured it knew the exact condition

and location of the insured property, and knew that the clear space of 150 feet, actual measurement, did not exist, and he also knew that the assured did not have it in its power to control a clear space for 150 feet, as mentioned in the policy. He knew that the adjoining docks 1 and 2 were being used for the purpose of piling lumber and shingles upon, and that it was not the intention of the assured to make any change in its method of conducting the business, or in the use of the space as it was used at the time the policy was given. He also knew, as stated in the brief of defendant's counsel, that in a narrow straight line from the lumber on the docks to the plaintiff's sawmill there was, perhaps, a clear space of 150 feet, but that out of a straight line this was not so, and that between the lumber on the docks and Hovey & McCracken's mill there was not a continuous clear space of even 100 feet. The rate of premium to be paid for insurance upon the different docks was fixed by defendant's agent with reference to the supposed risk in view of the manner in which the docks were used, and the distance from other exposure. The record shows that although the clear space referred to was not 150 feet, actual measurement, yet on account of the situation of the property, the manner of its use, and its proximity to water, it was considered equivalent to that distance by insurance men, and the testimony clearly shows that it was so considered in the office of the defendant's agent, who, with full knowledge of the actual distance maintained and to be maintained, wrote the policy referred to, and placed that distance at 150 feet. No change was made by the assured after the issuing of the policy, and of this fact, also, the defendant's agent had full knowledge. He resided in Muskegon, had examined this property with special reference to its location and to its desirability as insurable property, and, knowing these facts, issued the

policy referred to, and took the premium which he charged for the insurance.

The defendant insists that the clause, " that there shall be hereafter maintained 150 feet clear space," must be rendered literally, and without regard to the knowledge of the agent as to what the actual distance was, thereby asserting that it has the right to accept the money of the assured, issue its policy therefor, and lead it to understand that it has a valid insurance until a loss occurs, and then to repudiate its liability.   Such a rule as this would enable it to affirm a contract, entered into by it with full knowledge of all the facts, in so far as such·contract might be of advantage to it, and to repudiate it the moment it ceased to be advantageous.   This is inequitable, and contrary to the well-established rule in reference to when and how the repudiation of a contract shall be made.   The knowledge of the agent is the knowledge of the company.

" If the insurer receives the premiums with full knowledge of facts constituting a breach of one of the conditions of the policy, the right to insist that the policy is forfeited for that cause is gone."   *Mershon v. Insurance Co.*, 34 Iowa, 87.

In *Plumb v. Insurance Co.*, 18 N. Y. 392, where the agent of a company had incorrectly filled in the measurements, he himself knowing that they were incorrect, it was held that his knowledge bound the company,—that it was estopped to deny the assertion.

In *Rowley v. Insurance Co.*, 36 N. Y. 550, the application stated :   "I own the property; there is no incumbrance."   There was, however, a mortgage upon the property, of which the insurer's agent had notice; but, notwithstanding that notice, the agent filled up the policy, setting forth falsely that there was no incumbrance.   It was held that the insurer was estopped to set up the incumbrance as a defense to the action.

In *Hodgkins v. Insurance Co.*, 34 Barb. 213, the appli-cation stated: "The above property is owned and occupied by me." As a matter of fact these words were inserted by the defendant's agent after plaintiff had informed him as to the particular nature of his title and interest, which was a contract for the purchase of the land, and for which a deed was not demandable at the time the fire occurred. It was held that the knowledge of the agent was the knowledge of his concern, and that the insurer was estopped to defend on the ground that the interest was misstated.

In *Insurance Co. v. Bruner*, 23 Penn. St. 50, the description and survey were made a part of the policy and a warranty on the part of the assured, and one of the conditions was that a false description should vitiate the policy. The application failed to disclose mortgages to the amount of $6,000 which were upon the property. It stated that the works were operated by the proprietor, and lighted by closed lamps. The proof showed that an open light was used to light up. with; that the works were not exclusively operated by the proprietor. But it was proved that the company's agent knew how the building was occupied, and knew of the mortgages, and it was held that the plaintiff was entitled to recover.

In *Mutual Protection Co. v. Schell*, 29 Penn. St. 31, the insurer's agent examined the premises, and wrote the description in the application, but nothing was said about an oven contained in the building. Held, that it would not void the policy if the material matter was open to view, or if the insurer's agent had notice of it. The same rule was held in *Insurance Co. v. Cooper*, 50 Penn. St. 331.

In *Insurance Co. v. Spencer*, 53 Penn. St. 353, the policy stated that the risk should not be increased without the consent of the insurer. The assured did increase the risk

by using the property for the purpose of distilling whisky. It was held a question of fact for the jury whether the agent ought to have known from the examination he made, or was told, that the premises would be used for distilling, and, if he did know it, the company must be held to have taken the risk with its eyes open.

In *Insurance Co. v. Merritt*, 47 Ala. 387, the application described the property as a frame steam saw-mill and machinery contained therein. As a matter of fact there was a planing machine in the building, which was a class of property for which a higher rate of premium would have been charged. The insurer pleaded that the presence of the planing machine was concealed. The plaintiff replied that the application was written by the defendant's agent after an inspection of the property. It was held that the replication was good.

In *Franklin v. Insurance Co.*, 42 Mo. 456, it was stipulated that the interest of the assured in the property must be an entire, unconditional, and sole ownership. The company's agent was informed ·that the assured was only a part owner, and that the property was incumbered. It was held that the company was estopped to set up the conditional interest as a defense to the action.

In *Insurance Company v. Wright*, 22 Ill. 462, it was stipulated that, if the interest of the assured was other than absolute, the insurance should be void. The fact was that the absolute title was held by trustees for the use of his wife, which fact was not stated in the policy, but the particulars of the title were made known to the company's agent. It was held that the company was estopped to contradict the description stated in the policy.

In *Insurance Co. v. Garfield*, 60 Ill. 124, it was stipulated that if the interest of the assured was less than a fee it must be stated in the policy. The assured stated that it was a fee. The agent of the company knew that he had

made a mortgage upon the premises to secure $10,000, and the policy was made payable to the mortgagee. It was held that to permit the company to defend on that ground would countenance the perpetration of a gross fraud. The same rule is held in *Insurance Co. v. Nelson,* 65 Ill. 415; *Insurance Co. v. Shipman,* 77 Id. 189.

In *McBride v. Insurance Co.,* 30 Wis. 562, the application was filled up by the company's agent, stating the title to be in the plaintiff. It was held that if the agent was informed in regard to the title, and he inserted in the application an untruth in respect to it, the misrepresentation would not affect the plaintiff's right to recover. And in *Winans v. Insurance Co.,* 38 Wis. 342, where the assured was prohibited, among other things, from using gasoline within the insured building, except by writing indorsed on the policy, it was proved that the agent consented that the premises might be lighted with gasoline until a change in the manner of lighting could be effected. The premises were consumed by fire before the change was made. It was held to be settled law in that state that an agent of an insurance company, authorized to take risks and issue policies against fire, may waive by parol any conditions in the policies issued by him.

The agent who has power to accept applications and issue policies, but who with knowledge of the facts fails to state them correctly, binds the company to the misdescriptions made by him; and although the statements made in the application were untrue, yet if the insurer was informed of and knew the truth, and after such knowledge received the application and premium and issued the policy, he must be held liable, and the knowledge of the agent is the knowledge of the insurer. *Miller v. Insurance Co.,* 31 Iowa, 216; *Ayres v. Insurance Co.,* 21 Id. 185.

In *Peoria Ins. Co. v. Hall,* 12 Mich. 202, the policy, prohibited keeping gunpowder without permission written

upon the policy.   It was held that, if the agent who issued the policy knew that gunpowder was kept and to be kept, the contract was valid, whether permission was indorsed or not, notwithstanding the printed condition in the contract showing the agent's authority was limited, for the company must be regarded as having known that gunpowder was and would be kept, the knowledge of the agent being the knowledge of the principal; it would be a fraud to permit him to issue a policy which it intended to treat as void if loss occurred.

In *Ætna Live Stock, etc., Ins. v. Olmstead*, 21 Mich. 246, the application was required to state what, if any, incumbrances were upon the property insured, and the amount.   There were two mortgages upon it.   The company's agent admitted that he knew of the mortgages when he drew up the application.   The application was made part of the contract, and the answers were expressly made warranties.   It was held that the failure to disclose the mortgages was to be attributed either to the agent's ignorance, negligence, or fraudulent pretense of giving an indemnity when he knew he was giving none, and that it was a fraud on the assured to take the premium; hence the insurer was estopped on that ground.   The same rule was laid down in *Mich. State Ins. Co. v. Lewis*, 30 Mich. 41; *Hall v. Insurance Co.*, 90 Id. 403; *Haire v. Insurance Co.*, 93 Id. 481.

In commenting on this subject, in *Insurance Co. v. Olmstead, supra*, Mr. Justice COOLEY says:

" It is true that in this case the paper in question was drawn by an agent, but we do not think that in a legal point of view the rights of the parties are any different from what they would be had the agent himself been insurer.   The insurance business of the world is done through agents almost exclusively, and the maxim, *qui facit per alium facit per se*, applies with special force to their acts.   These agents assume to have, and generally do

have, much more intimate knowledge of the business than those with whom they deal;     *     *     *     and when an agent, who at the time and place is the sole representative of the principal, assumes to know what information the principal requires, and, after being furnished with all the facts, drafts a paper, which he declares satisfactory, induces the other party to sign it, receives and retains the premium moneys, and then delivers a contract which the other party is led to believe, and has a right to believe, gives him the indemnity for which he paid his money, we do not think the insurer can be heard in repudiation of the indemnity, on the ground of his agent's unskillfulness, carelessness, or fraud. If this can be done, it is easy to see that community is at the mercy of these insurance agents, who will have little difficulty, in a large proportion of the cases, in giving a worthless policy for the money they receive."

Act No. 149, Laws of 1881, which is an act to provide for a standard form of fire insurance policy, was evidently intended by the Legislature to prevent some of the abuses complained of by Mr. Justice Cooley, for it is expressly stated in the act that the form of policy contemplated by it was for the purpose, among other things, of "securing fairness and equity between the insurers and assured," and for the "avoidance of conditions, the violation of which by the assured would, without being prejudicial to the insurer, render the policy void, or voidable at the option of the insurer." If the end sought for by the Legislature has not been accomplished it is no fault of the act. It is certain, however, that it was not thought desirable that the insurer should be furnished with any more avenues for the avoidance of its policies than had already been recognized by the courts, when dealing with the forfeiture clauses usually contained in policies of insurance. No different rule should be adopted in this class of cases than is in others, and the same rules in relation to estoppel and waiver should be applied.

In this case the agent of the company knew the exact

amount of continuous clear space kept, and to be kept, by the plaintiff, and decided that such clear space, in consideration of the situation of the property and its surroundings, was equivalent to 150 feet, as ordinarily understood by insurance men. He wrote the distance in the policy himself. He took the plaintiff's money for a supposably valid insurance, and led it to believe it was such. He knew that no change was made by the plaintiff to increase the actual amount of continuous clear space after the policy was issued, and that it was not expected by either party that it should do so. Yet, knowing these facts, no steps were taken by him to cancel the policy, or to refund the money obtained from plaintiff on account of it. The benefits of the transaction were all retained by the defendant so long as no liability was impending, and it was not until after the loss occurred that a forfeiture was claimed by it. To allow this to be done under these circumstances would be to permit a person to keep silent when he should speak, and to enable him to reap the benefit of his own wrongdoing after having himself led his victim into a trap. It must be held that the defendant is estopped from avoiding the policy for the reasons claimed by it.

The judgment is affirmed, with costs.

McGRATH, C. J., and LONG, J., concurred with DURAND, J.

GRANT, J. (*dissenting*). This is a suit upon a policy of insurance dated September 2, 1890, and covering the same property as that in the case of *Mich. Shingle Co. v. London & Lancashire Fire Ins. Co.*, 91 Mich. 441.

The policy is one known as the "Michigan Standard," being the one required by the Michigan statute. Its terms are identical in language with that of the London & Lancashire Fire Insurance Company. The warranty for the maintenance of 150 feet clear space is the same. The

only difference between the facts of the two cases is that in this case the policy covered the lumber upon docks 3, 4, and 5, while in the former case the policy covered the lumber upon all the docks.    The declaration was in the usual form, and alleged that the plaintiff had in all respects complied with the terms of the policy.    This, of course, was an allegation that it had preserved 150 feet clear space between the property insured and "any wood-working or manufacturing establishment, and that said space had not been used for handling or piling of lumber thereon for temporary purposes, tramways alone being excepted."    The policy also provided that this clause should not be construed to prohibit loading or unloading within, or the transportation of lumber and timber products across, such clear space.    The defendant introduced no testimony.

The situation of the property will be better understood by the diagram on following page.

The evidence on the part of the plaintiff tended to show that it maintained a clear space of 150 feet in a direct line from its lumber on docks 3, 4, and 5 to its mill; that it had been carrying on business there for several years; that it had never paid any attention to space between material stored on docks 1 and 2 and its mill; that the customary rate of insurance on docks 1 and 2 was 5 per cent., and on docks 3, 4, and 5, 2¾ per cent.; that to the east of dock 1 were situated the docks and saw-mill of another company, with a clear space of less than 100 feet between; that the agent of the defendant company visited the premises in the fall of 1889, and while both of these mills were in operation, for the purpose of examining the risk; that he was frequently upon the premises in the summer of 1890, and was familiar with the use made of docks 1 and 2, upon which shingles manufactured at plaintiff's mill were piled for shipment.    Plaintiff's agent was asked to state

how insurance men regarded and treated the space maintained by the plaintiff between the material piled on docks 3, 4, and 5 and the mill. His reply was:

" Why, if we maintained a space between the material piled on docks 3, 4, and 5 and our own mill, that was full vindication of the requirements of the policy."

One Easton, a local insurance agent, testified that he knew the use to which these docks were put, and that the rate of $2.75 per hundred on docks 3, 4, and 5 was because there was 150 feet space from the mill. On cross-examination the witness was asked:

"*Q.* When you say that that rate was fixed because it was more than 150 feet from any wood-working or manufacturing establishment, you mean because there was more than 150 feet of clear continuous space between the property rated and such an institution, do you not?

"*A.* I mean to say that there was 150 feet space between the shingle company's mill and this lumber.

"*Q.* In fixing the rate at $2.75 on lumber, it is established only in such cases where there is at least a continuous clear space of 150 feet between the property rated and such an establishment, is it not?

"*A.* I don't think there was 150 feet space.

"*Q.* You don't answer my question.

"*A.* That is the basis the rate is fixed."

One Wood, another local insurance agent, testified that he thought the space between dock 1 and the westerly dock of the adjoining mill-owners, which was less than 100 feet, was considered equivalent to 150 feet. He further testified that sometimes docks 1 and 2 were covered with shingles, and sometimes they were not, and that they varied at different times in amount and in places where they were piled, according as they were manufactured and shipped. In reply to the question whether in placing insurance under the circumstances it would be expected by insurance men that the material on docks 1 and 2 should be removed, or

whether he would simply expect to maintain substantially
the same conditions as existed at the time the insurance
was effected, this witness said:

"That would be considered as maintaining it at the
time the insurance was effected by some insurance men.
I don't know that all would consider it so."

All this testimony was received under objection and
exception. At the time of the fire, shingles were piled
upon docks 1 and 2 to within 25 or 30 feet of the mill,
and lumber was also piled upon the docks of the adjoin-
ing mill-owners to the east. The above is a substantial
statement of all of the material testimony.

The court submitted the case to the jury, and the theory
upon which this was done appears in the following portion
of his charge:

"The main controversy in question for you to decide is
whether or not the plaintiff did maintain, during all the
time this policy of insurance was in force,—that is, from
the time it was issued up to and including the time of the
fire,—this continuous clear space of 150 feet between the
property insured on these three docks and any wood-work-
ing or manufacturing establishment, according to the true
intent and meaning of that language as employed in that
policy, and as the parties understood it. The plaintiff
claims that it did. The defendant claims it did not. To
entitle the plaintiff to recover, it must have satisfied you
by a fair preponderance of the testimony in the case that
it did maintain that clear space. Now, the contention is
right there. The plaintiff says, 'We did maintain it; we
made the contract; we don't deny it; it is there just as it
reads; but we insist that we did maintain that space just
as we understood it, and just as you understood it,—just as
you knew we understood it.'"

The jury found a verdict for the plaintiff.

The facts were undisputed, and the question was one of
law to be determined by the court. The jury must have
found that the plaintiff and defendant's local agent under-

stood and agreed that 25 or 30 feet between docks 1 and 2 and the mill was the equivalent of the 150 feet provided by the contract, and that the space of 96 feet between dock 1 and the next dock to the east was also the equiv-alent of 150 feet. The warranty was not one as to existing facts, but of conditions to be maintained in the future. There is nothing upon this record to show, nor is it claimed, that the plaintiff did not fully understand the terms of its contract. It knew that it had agreed to maintain 150 feet clear space. The condition was not impossible of performance. The result of this holding would be to set aside the plain and unmistakable terms of a contract, and substitute therefor by implication another and entirely different contract. The warranty was not affirmative, but promissory, in its character. If this be the rule, then if plaintiff had been in the habit of keeping a pile of lumber midway, and in a direct line, between these docks and its mill, and the defendant's local agent had known this when the policy was issued, the subsequent maintenance of such a pile of lumber would not have vitiated the policy, and the space would be held to be the equivalent of 150 feet clear space. Again, if there had been another mill or wood-working establishment situated 20 feet, or any number of feet less than 150, to the northward of docks 3, 4, and 5, this must in law be held to have been the like equivalent. Many other illustrations will readily suggest themselves to show the consequences of such a rule.

Mr. May, in his work on Insurance (section 156), says:

"One of the very objects of the warranty is to preclude all controversy about the materiality or immateriality of the statement. The only question is, has the warranty been kept? There is no room for construction, no latitude, no equity. If the warranty be a statement of facts, it must be literally true; if a stipulation that a certain act shall or shall not be done, it must be literally performed."

Plaintiff averred that it had kept 150 feet clear space. It did not allege that in one direction it kept only 25 or 30 feet, or that in another it kept but 96 feet, and that this was understood and agreed to be the equivalent of 150 feet. No such issue was framed for trial. If this clause had been inserted in the contract by fraud or mistake, plaintiff's remedy would have been in equity to reform the contract. The testimony admitted to change the express terms of the contract was incompetent. It did not tend to show any fraud or mistake, nor refer to any statements of the agent of either party affecting the question. When a principal has received a contract, made in his name by his agent, which. on its face has but one meaning, such contract cannot be changed or avoided by showing a custom of business prior to the contract, and leaving a jury or court to infer that something else was meant. This case is, in my judgment, clearly ruled by *Mich. Shingle Co. v. Insurance Co.*, 91 Mich. 441.

It is the duty of courts to interpret contracts, not to make them. When the language is susceptible of but one meaning, courts have no right to say that the parties meant something else. This is not a case where the assured disclosed his title to the agent of the insurer, and the agent neglected to disclose it to his principal, as was the case in *Rowley v. Insurance Co.*, 36 N. Y. 550; *Hodgkins v. Insurance Co.*, 34 Barb. 213; *Franklin v. Insurance Co.*, 42 Mo. 456; *Insurance Co. v. Wright*, 22 Ill. 462; *Insurance Co. v. Garfield*, 60 Id. 124; *Ætna Live Stock, etc., Ins. Co. v. Olmstead*, 21 Mich. 246; *McBride v. Insurance Co.*, 30 Wis. 562; nor of the failure of the agent of the insurer, who wrote the application and took the risk, to insert in it that a planing mill was used in the mill, as was the case in *Insurance Co. v. Merritt*, 47 Ala. 387; nor of the parol waiver of a condition in the policy by the agent till a change could be made to correspond

with its terms, as in *Winans v. Insurance Co.*, 38 Wis. 342; nor where the assured was induced by the agent to believe that he could keep gunpowder, which was prohibited by the policy, as in *Peoria Ins. Co. v. Hall*, 12 Mich. 213. These cases, and may like them, are based upon the fact that there was a difference between the representations in the policy and the actual facts existing at the time, or that there was an express waiver by the agent of a condition in the policy. In the present case there was no misrepresentation, no misunderstanding, no statement made to induce the assured to believe that its contract meant other than it read, or that it would be relieved from the full performance of its provisions. Plaintiff's warranty was not that a certain state of facts existed, but that a certain state of facts should exist *in futuro*. If it did not desire such a contract it should have declined to make it. It cannot now be heard to say to the defendant: "You knew that I did not intend to keep my warranty, and therefore are estopped to say that I did not keep my contract."

Judgment should be reversed, and no new trial ordered.

MONTGOMERY, J., concurred with GRANT, J.