98  609
f118  282

THE MICHIGAN SHINGLE COMPANY v. THE PENNSYL-
VANIA FIRE INSURANCE COMPANY.

*Fire insurance—Conditions of policy—Estoppel.*

This case is ruled by *Michigan Shingle Co. v. Insurance Co.*, 94
Mich. 389.

Error to Muskegon. (Dickerman, J.)   Argued Novem-
ber 21, 1893.   Decided February 6, 1894.

*Assumpsit.*   Defendant brings error.   Affirmed.   The
facts are stated in the opinions, and in 94 Mich. 389.

*Bunker & Carpenter* and *Thomas Bates,* for appellant.

*Smith, Nims, Hoyt & Erwin,* for plaintiff.

LONG, J.   This suit was brought upon two policies,
dated, respectively, August 4 and August 18, 1890,—both
Michigan standard policies,— one covering $1,000 "on
lumber (lath and shingles, if any) owned by the assured,
or held in trust or on commission, or sold but not delivered,
piled on their mill docks Nos. 4 and 5, Muskegon, Mich.,"
and the other covering $1,000 "on lumber (lath and
shingles, if any) owned by them, or held in trust or on
commission, or sold but not delivered, while on their mill
docks Nos. 3, 4, and 5, Muskegon, Mich."   Both policies
provide, in the written portions, as follows:

"Warranted by the assured that a continuous clear space
of 150 feet shall hereafter be maintained between the prop-
erty hereby insured and any wood-working or manufactur-
ing establishment, and that said space shall not be used
for handling or piling of lumber thereon for temporary
purposes,—tramways, upon which lumber is not piled, alone
being excepted,—but this shall not be construed to pro-

hibit loading or unloading within, or the transportation of lumber or timber products across, such clear space; it being specially understood and agreed by the assured that any violation of this warranty shall render this policy null and void."

The policies were originally written covering identically the same lumber upon these docks for a term of three months, at a premium of $20 each, and without any space clause. Upon receipt of the agent's report, and several days after the policies were issued, the general agents of the company at Erie, Penn., telegraphed their agent at Muskegon to cancel the two policies just written on the Michigan Shingle Company's docks. Upon receiving the telegram, he attached the 150 feet clear-space clause to the policies, and telegraphed the general agents that the policies had been changed to 150 feet clear space. Within a few days after these telegrams were sent, the agent at Muskegon received a letter from the general agents, as follows:

"We have your telegram of yesterday, stating that you had changed space clause in policies issued to the Michigan Shingle Company 150 feet. Now, if you can extend the term of the insurance for one year, the matter will be satisfactory. You are probably aware that we are not in the habit of writing short policies on lumber risks. Unless we can be favored with a yearly contract, which, of course, can be canceled any time the assured wishes, we do not care to retain the line."

After the receipt of this letter the general agents were advised that the clear-space clause had been added, and the term extended to one year, the premiums being changed from $20 for three months to $27.50 for one year.

A fire occurred on September 9, 1890. It started in the mill. A portion of the shingles on docks 1 and 2 was burned. The lumber on docks 3, 4, and 5 was totally destroyed. On the trial it was contended by the defendant

that the clear space was not kept and maintained by plaintiff as provided by the terms of the policies.

The situation of the docks, and clear space between them and the mill, are substantially set out in *Michigan Shingle Co. v. Insurance Co.*, 94 Mich. 389. The loss sought to be recovered for here occurred as stated in that case. It was the same fire. In that case is set out the situation of the Hovey & McCracken mill, and its piles of lumber, and the facts need not be here repeated. The cases are substantially alike in all particulars. The policy in that case contained the same clear-space clause; and in the present case the record shows that the agent of the company at Muskegon knew, as in that case, the situation of the mills and lumber, and the manner in which plaintiff conducted its business. The fact that the general agents of the company insisted upon the clear-space clause being inserted in the policies does not change the rule. From the entire record, it clearly appears that it was understood between the parties that the use of the docks was to continue as in the past, and that the then situation of the lumber and shingles was regarded by all the parties as equivalent to the clear space required by the policies.

Judgment affirmed.

McGRATH, C. J., concurred with LONG, J.

MONTGOMERY, J. I am not able to distinguish this case from *Michigan Shingle Co. v. Insurance Co.*, 94 Mich. 389, and therefore concur with Mr. Justice LONG.

HOOKER, J. (*dissenting*). The plaintiff took insurance policies in the defendant company upon its mill and lumber. At the time of the fire which subsequently occurred, there was insurance in other companies, and this Court has had occasion to pass upon one of the policies. *Michigan Shingle Co. v. Insurance Co.*, 94 Mich. 389. It was there held that the clause called, for convenience, the "Clear-

Space Clause," was inserted with full knowledge upon the part of the agent that the assured did not have it in its power to control a clear space for 150 feet, and that it was not the intention of the assured to discontinue the practice of piling its lumber within that distance. The opinion states that the record in that case showed that,—

"Although the clear space referred to was not 150 feet, actual measurement, yet on account of the situation of the property, the manner of its use, and its proximity to water, it was considered equivalent to that distance by insurance men, and the testimony clearly shows that it was so considered in the office of the defendant's agent, who, with full knowledge of the actual distance maintained and to be maintained, wrote the policy referred to, and placed that distance at 150 feet."

The policy involved in this case was first issued for the period of three months. The premium was $20, and it contained no clear-space clause. The company thereupon directed the agent to cancel it. The plaintiff thereupon accepted the policy, with the clear-space clause added, for the term of one year, at a premium of $27.50. It seems to have been understood that the objections to the policy on the part of the company were the absence of the clear-space clause and the shortness of the term. It cannot be denied that this clear-space clause is a plain promise to keep a space of 150 feet clear, surrounding the mill. In consideration of its insertion, a material reduction in rate was made. There is nothing uncertain or ambiguous about it. Any man who can read can understand it. The assured knew that the company would not continue the policy without it. There is nothing in this record to show that it was in any way misled, or that there was any understanding that the "clear-space of 150 feet" had any other meaning than what the words express. If the rule laid down in the case of 94 Mich. 389, is to be applied to this case, it must be because the agent did not

cancel the policy when the plaintiff failed to make and keep the space clear. We do not understand it to be the legal duty of a party to a contract to see that the other faithfully performs his obligations, or that he loses his advantages of, and rights under, a contract, because he does not at once rescind when the other fails to perform it. We can understand that the doctrine of estoppel may sometimes preclude a party from asserting rights under a contract where his conduct is such as to justify it, but there appears no room for it here. The plaintiff had notice that the clear space was relied upon. It assented to it for the purpose of obtaining insurance at a low rate, and then disregarded it for its own benefit. It cannot shift upon the defendant the responsibility of preventing its own breach of contract. The defendant had a right to suppose it would perform its part of the contract, which should be as binding upon the plaintiff as the obligation to pay, in case of loss, was upon the defendant.

I think the judgment should be reversed, and a new trial ordered.

GRANT, J. I concur in the opinion of my Brother HOOKER. This case is clearly distinguishable in fact and in principle from that of *Michigan Shingle Co. v. Insurance Co.*, 94 Mich. 389. In that case the plaintiff accepted the policy with the clear-space clause included in it, and the company was held estopped to deny that a less space than 150 feet was considered and understood to be its equivalent. Whatever authority a local insurance agent may have to bind his principal by matters which are in contradiction of the plain terms of the contract does not apply to this case. The agent made report of the policy issued to his principal. His principal repudiated the contract, and ordered it canceled, unless the agreement for 150 feet clear space was inserted. This was agreed to, and a new policy issued, with this clause in it. There is no claim

that the principal in fact knew the situation. This instruction by the principal was communicated by the agent to the assured. This was a limitation of his authority or power to bind the company by an estoppel. It would be an erroneous doctrine, in my judgment, to hold that where a principal has repudiated the contract made by his agent, and insists upon a different contract, to which the other party assents, the terms of the repudiated contract must control, rather than the terms of the executed contract.