## COLLINS *v.* NORTH BRITISH & MERCANTILE INSURANCE CO.

FIRE INSURANCE—CLEAR-SPACE CLAUSE—EVIDENCE—ESTOPPEL.
> A finding that the insured, at the time of taking out a policy, informed the agent of the insurance company of the location of his property with substantial accuracy, and that, therefore, the company is estopped from asserting a violation of the "clear-space" clause, is justified by evidence that he furnished the agent with a rough diagram approximately showing the correct situation, but which the agent incorrectly copied, and that neither party understood the diagram to be precisely accurate.

Error to Newaygo; Edwards, J.   Submitted June 14, 1898.   Decided October 3, 1898.

*Assumpsit* by David Collins against the North British

& Mercantile Insurance Company on a policy of fire insurance. From a judgment for plaintiff, defendant brings error. Affirmed.

*McGarry & Nichols* (*Crane, Norris & Stevens, amici curiæ*), for appellant.

*George Luton* (*W. D. Fuller*, of counsel), for appellee.

MONTGOMERY, J. The plaintiff recovered a verdict on a fire-insurance policy, and defendant brings error. The defenses made below were two: (1) That the plaintiff himself burned the property; and (2) that there was a violation of the "clear-space clause," so called.

The first question was submitted to the jury, and found against the defendant. The meritorious question arises out of the following provision of the policy, viz.: "Warranted by the assured that a continuous clear space of 150 feet shall hereafter be maintained between the property hereby insured and any wood-working or manufacturing establishment." It appeared by the undisputed testimony that there was not between an unused sawmill and the lumber insured 150 feet of clear space; that the mill was situated about 250 feet in a direct line from the lumber, but that 101 feet from the lumber was a house 18x46, and that from this house to the mill was a distance of about 100 feet. Plaintiff's counsel concede that the situation was not exactly as warranted, but contend that the agent of the insurance company was fully apprised of the situation before the policy was written, and that, therefore, within the rule laid down in *Michigan Shingle Co.* v. *State Invest. & Ins. Co.*, 94 Mich. 389 (22 L. R. A. 319), and *Michigan Shingle Co.* v. *Pennsylvania Fire Ins. Co.*, 98 Mich. 611, the company is estopped from asserting the breach of warranty. The defendant's counsel, on the other hand, contend that the undisputed testimony shows that the true state of facts was not revealed to the agent.

It would appear by the testimony of defendant's witnesses that a diagram was prepared by a Mrs. Underwood, a clerk in the office of the agent, Shaw; that this diagram showed the distance from the lumber to the mill to be 250 feet; that in a line drawn from the mill to the lumber east and west there were no buildings or barns, but a dwelling house and barn were shown farther north; that the barn was marked 95 feet from the lumber, and the distance from the barn to the mill was not given, nor were the dimensions of the barn given; so that it is not very clear from the plat whether or not there would be 150 feet of clear space between the barn and the mill, assuming the correctness of the map, but it is clear that, according to any scale adopted, there was not shown any such clear space.   If the distance noted on the east and west line as 250 feet be taken as a basis, it is still uncertain, as the size of the barn is not given.

It is admitted, however, that the diagram drawn by Mrs. Underwood is inaccurate, in that it should have placed the house and shed substantially on a direct east and west line drawn from the lumber to the mill, and that there was not in fact a clear space of full 150 feet. It is contended by counsel for defendant that plaintiff's own testimony shows that this diagram was drawn from the plaintiff's directions, and fully approved by him.   Mr. Collins did, it is true, testify that the preparation of the diagram was done under his supervision, but he further testified as follows:

" *Q.* What is your recollection as to the location as given by you of the barn and the dwelling house that were represented here to the left of the 250 feet ?

"*A.* Well, I think this is just the same as I have looked at before.   I went there, and made an application to insure the lumber that I had at Conger Station; and Mr. Shaw asked me the location and the surroundings, and I went on and described to him, as well as I could, and he didn't appear to understand.   Then I took a scrap of paper, and made a rough diagram of it, upon which I represented those buildings; and I told them about these

buildings being there, and the distances. The house I represented as a small house, and a small barn, I think I called it, that was north of it. I had marked out the location of this dwelling on this diagram.

" *Q.* How does the location that Mrs. Underwood has given upon the diagram of that house and barn correspond with what you told them, as you remember it, as to the location? Have they got it correct as you told it?

"*A.* They have got it correct with the exception of having the buildings farther north than I marked them in my diagram,—than I told them. That is my recollection.

" *Q.* You made no measurement at the time, and didn't make any diagram of the ground, and what you told them was from your recollection of the location of things there?

"*A.* I had paced; I hadn't measured with a tapeline.

" *Q.* (showing witness a map). You notice on this map a house and shed, as they call it, represented as on a direct line between the lumber and the mill?

"*A.* Yes, sir.

" *Q.* Now, you see the way they represented it on the diagram?

"*A.* Yes, sir.

" *Q.* Way to the north or left of that?

"*A.* Yes, sir.

" *Q.* You say you had paced the distance from the lumber to the house?

"*A.* Yes, sir; I made it 95 feet by pacing, and 101 feet by measurement with a tapeline afterwards; that was from the house to the lumber.

" *Q.* What I want to know is whether Mrs. Underwood is correct according to your recollection,—whether you represented the location of this house in the place she has put it on the diagram.

"*A.* I don't think I did. I knew where the house was. I think that I got the house on the diagram that I gave her, and I think you will find it, if you find it, right there at about the north end of the house, as represented here. I made the diagram by standing over near the lumber on the north part, and I looked from there, and I think I got the house a little too far north. But I don't think I got it as far north as she has got it. I am quite positive that I did not. I think she made a mistake there.  *  *  *

" *Q.* Did you pronounce it correct after she had got through drawing it, as she testifies?

"*A.* I did not look at it at that time as it is here now, if that is the one.

"*Q.* She testifies that that is the one. Have you any doubt of that? Have you any doubt that she testified to the fact?

"*A.* I would not want to. It don't seem possible to me that I could be so mistaken about that house being so far to one side there, but I have no doubt of her truth in the matter."

We think this testimony was sufficient to raise a question for the jury as to whether the plaintiff, at the time of taking out the insurance, informed the agent of the situation of the property with substantial accuracy. It is significant that none of the parties understood that this diagram was precisely accurate. If, as the plaintiff states, the diagram drawn by him showed the house and barn farther south, it was not his fault that the clerk made the mistake in putting on paper the results of the information given her.

The other questions raised have had consideration, and no error is discovered.

The judgment will be affirmed.

The other Justices concurred.