## The Ætna Live Stock, Fire & Tornado Insurance Company v. Jay Olmstead.

*Policy of Insurance: Application: Representation.* Where a representation in an application for insurance was ambiguously expressed, and the applicant was at the time of making it, assured by the agent who acted on behalf of the insurers, and who filled out the application, that it correctly embodied the verbal statement made by the applicant to the agent; upon which assurance, under the circumstances of the case, the applicant might reasonably rely, the insurers will not be heard to say that the representations were not true, and thus, for that reason, avoid the policy.

*Agents of Insurance Companies.* The agent of an insurance company, in the verbal explanations made by him as to the meaning of the terms employed in the forms of the company, will be regarded as speaking in the name of the company; especially, when such terms relate to matters not generally understood: and when the applicant has reason to suppose that he has given the agent all the information desired, and as such it has been embodied in the proper form in the application, he will not be deprived of the indemnity the company contracted to give him, because of the unskillfulness, carelessness or fraud of the agent.

*Heard July 11. Decided July 12.*

Error to Wayne Circuit.

This was an action upon a policy of insurance, brought in the Circuit Court for the County of Wayne, by Jay Olmstead, against the Ætna Live Stock, Fire and Tornado Insurance Company. The plaintiff declared specially upon the policy, and averred the loss in the usual form. The defendant pleaded the general issue, and gave· notice that it would prove that a warranty in the application, as˜ to incumbrances, was false. The alleged warranty was con-

tained in the answer to the ninth interrogatory of the application, and was in the following words:

"9. *Incumbrance.*—If any, state the amount. Is there any insurance by the mortgagees? State the amount. 9. No."

The questions to be reviewed in this Court, arise upon the charge of the Court, who on the request of the plaintiff instructed the jury:—

1. If at the time of taking the application, C. W. Olmstead, the agent of the company, knew of the existence of the mortgages, they do not render the policy void, whether they were mentioned in the application or not. The knowledge of the agent is the knowledge of the company.

And on the refusal of the defendant's request to instruct the jury:

1. That under the policy in this case the answer to the ninth interrogatory in the application is a warranty by the assured, and it being conceded that at the time the application was made the property was incumbered by way of mortgage to the amount of about four thousand eight hundred dollars, the policy is absolutely void, and the fact that the agent, C. W. Olmstead, knew at the time he took the application, of the existence of both mortgages does not in law constitute a waiver by the company of the warranty as to incumbrances, and the plaintiff cannot recover.

2. That where the agent who takes the application does not issue the policy, as in the case at bar, notice to the agent is not notice to the company, for the purpose of creating a waiver by the company of an express warranty.

The defendants excepted to the charge as given, and to the refusal to charge as requested; and a verdict having been rendered for the plaintiff, the judgment entered thereon comes into this Court by writ of error.

*S. Larned* and *F. A. Baker*, for plaintiff in error.

I. The existence of incumbrances on property to be insured is a fact, material to the risk, if specifically inquired after in the application for insurance, and if the answer to the inquiry is false, the policy is void, whether the application is a warranty by the assured or a mere representation.—*Patten v. Merchants & Farmers' Ins. Co., 38 N. H., 338; Richardson v. Maine Ins. Co., 46 Maine, 394; Davenport v. New England Ins. Co., 6 Cush., 340; Packard v. Agawam Ins. Co., 2 Gray, 334; Bowditch Ins. Co. v. Winslow, 3 Gray, 415; 8 Gray, 38; Friesmuth v. Agawam Ins. Co., 10 Cush., 587; Wilbur v. Bowditch Ins. Co., 10 Cush., 446; Hayward v. New England Ins Co., 10 Cush., 280; Hutchins v. Cleveland Ins. Co., 11 Ohio St., 447; Brown v. People's Ins. Co., 11 Cush., 444; Murphy v. People's Eq. Ins. Co., 7 Allen, 239; Towne v. Fitchburg Ins. Co., 7 Allen, 51; Jacobs v. Eagle Ins. Co., 7 Allen, 132; Gohagen v. Union Ins. Co., 43 N. H., 176.*

But where an application is made a part of the policy, the statements made in it, in answer to specific interrogatories, are warranties by the assured, even though the application is not declared in express terms in the policy, to be a warranty.—*Pennsylvania Ins. Co. v. Goltsman, 43 Penn. St., 151; Battles v. York Ins. Co., 41 Maine, 208; Smith v. Empire Ins. Co., 25 Barb., 497,* and cases cited.

II. A warranty, in a policy of insurance, is either affirmative or promissory, and is in the nature of a condition precedent; and whether a warranty be material to the risk, or not, the insured stakes his claim to indemnity, upon its precise truth, if it be affirmative, or upon the exact performance of it, if executory.—*1 Bouvier's Institutes, 492.*

In the present case the counsel for the plaintiff seeks to avoid the effect of the false warranty as to incum-

brances, by showing that the agent who took the application knew of the existence of the undisclosed mortgages, and conversed with the plaintiff about them, at the time the application was signed; and whether such knowledge by the agent can change and contradict the written agreement of the parties is really the only question to be determined. Where the parties have reduced a contract to writing, it has always been considered a wise and salutary rule, that all prior and contemporaneous verbal arrangements are conclusively presumed to have been merged in the writing, and that all oral testimony of a previous *colloquium* between the parties is incompetent. In the following cases, analogous to the case at bar, this rule was applied, and the policies held to be invalid, although the insured truly informed the agent, who filled up the application, of a fact untruly stated in it.—*Jennings v. Insurance Co., 2 Denio, 75; Manufacturing Co. v. Insurance Co., 21 Conn., 19; Kennedy v. Insurance Co., 10 Barb., 285; Tebbets v. Insurance Co., 3 Allen, 569; Riply v. Insurance Co., 30 N. Y., 136; Lee v. Insurance Co., 3 Gray, 583; Wilson v. Insurance Co., 4 R. I., 141.*

These cases are not in conflict with the decision of this Court in *Peoria Ins. Co. v. Hall, 12 Mich., 202*, because the warranty in that case was implied from the fact, that the assured accepted a policy containing the particular condition in question, but did not make any express warranty over his own signature, as in the cases cited above, and in the case at bar.

*Moore & Griffin*, for defendant in error.

We consider this case determined by the case of *Peoria Marine & Fire Insurance Co. v. Hall, 12 Mich., 203.* The answer to the 9th interrogatory is not a warranty. Neither the policy nor the application makes it so.—*Ætna Ins.*

Co. v. Grube, 6 Minn., 82; Garcelon v. Hampden Fire Ins.
Co., 50 Maine, 580; Patten v. Merchants & Farmers'
Mutual Fire Ins. Co., 40 N. H., 375; Nicoll v. American
Ins. Co., 3 Woodb. & M., 529; Hartford Protection Ins.
Co. v. Harmer, 22 Ohio, (N. S.), 433; Roth v. The City
Ins. Co., 6 McLean, 325.

If there is any doubt, the construction will be in favor
of the insured.—Daniels v. Hudson River Fire Ins. Co., 12
Cush., 416; Wilson v. The Conway Fire Ins. Co., 4 R. I.,
142.

But we insist that even though the answer to interrog-
atory 9th be treated as a warranty, it will make no differ-
ence.—Ames v. The N. Y. Union Ins. Co., 14 N. Y., 253;
Plumber v. Cattaraugus Mutual Ins. Co., 18 N. Y., 392;
Rowley v. The Empire Ins. Co., 3 Keyes, (N. Y.), 567.

COOLEY, J.

Olmstead recovered judgment in the Court below upon
a policy of insurance issued by the plaintiffs in error, and
by which they insured him against loss by fire on his hotel
and the furniture therein, and hotel-barn, in the village of
Lyons. A loss having occurred, the insurers refused to pay
on the ground of a breach of warranty by the insured,
which, by the terms of the policy, rendered that instrument
void.

It appears that by the policy, it was expressly provided
that "if an application, survey, plan or description of the
property, herein insured, is referred to in this policy, such
application, survey, plan or description, shall be considered
a part of this policy, and a warranty by the insured." The
policy was based upon an application, which contained
questions and answers, and the ninth question, with the
answer thereto, was as follows:

"9. Incumbrance; if any, state the amount. Is there

any insurance by the mortgagees? State the amount. 9. *No.*"

The breach of warranty relied upon was, that at this time there were two mortgages upon the insured property; and this fact was not disputed. To avoid the force of this objection, Olmstead, the plaintiff (below), called the agent of the insurance company, and proved by him that at the time of taking the application he knew of the existence of the two mortgages; that the witness drew the application, and asked Olmstead to look at and sign it; that the question of incumbrances was talked over between them at the time, and whether the mortgages should be mentioned in the application was fully discussed; that the witness advised Olmstead that he did not think it would make any difference whether the mortgages were mentioned in the application or not, as there was no insurance by the mort-gagees; that the witness expressed the opinion to Olmstead that he could answer the ninth interrogatory " No," and that Olmstead would not have signed it if the witness had not told him he had better.

If we recur again to the ninth interrogatory we shall perceive that in fact it embraces a number of questions, only one of which can be answered by a distinct affirma-tive or negative. The only answer given to all these ques-tions is " No;" and this is a proper reply only to the question—" Is there any insurance by the mortgagees?" It does not answer the request to state the amount of incum-brance, if any. The interrogatory and the answer taken together are ambiguous, and we cannot feel assured that the applicant, in signing this paper, understood his reply as asserting anything more than that there was no insurance on behalf of mortgagees on the same property. The parol evidence tends to show that that was his understanding; that he was led to believe that it was to the point of other

insurance that the interrogatory was directed, and consequently he had given the insurers all the information their blank application called for.

And we think it becomes pertinent to inquire, Who impressed him with this belief? Had it been some one of whom he sought information and counsel on his own behalf, or had it even been a mere stranger, the insured must have acted upon his belief at his peril. Such, however, was not the case here. The agent of the insurance company assumed to have all the requisite knowledge for preparing the proper papers, and volunteered to make them out. He had all the necessary information for that purpose, and nothing was concealed from him. If the application is not in due form, and if it fails to give all the information called for, it must be either because the agent was too ignorant of the business to be properly intrusted with the agency, or because he was so negligent or reckless that he did not trouble himself to draft them correctly, or lastly, because he was disposed to take Olmstead's money on the fraudulent pretense of giving him indemnity when he knew he was giving none whatever.

The general rule undoubtedly is, that in the absence of fraud, accident or mistake, a party must be conclusively presumed to understand the force of his contracts, and to be bound by their terms. But it cannot be tolerated that one party shall draft the contract for the other, and receive the consideration, and then repudiate his obligation on the ground that he had induced the other party to sign an untrue representation which was, by the very terms of the contract, to render it void. Still less can this be allowed when the representation itself is so ambiguously worded as to be well calculated to conceal its real meaning, and to deceive the party signing it.

It is true that in this case the paper in question was

drawn by an agent; but we do not think that, in a legal point of view, the rights of the parties are any different from what they would be had the agent himself been insurer. The insurance business of the world is done through agents almost exclusively, and the maxim *qui facit per alium facit per se* applies with special force to their acts. These agents assume to have, and generally do have much more intimate knowledge of the business than those with whom they deal. They may also be fairly presumed to understand the requirements of their principals, and how properly and legally to fill up the blank applications and other papers with which their principals entrust them. The community in general do not assume to be familiar with these matters, and would not venture in any case to set up their own view of what was or was not the proper form of an application, against the positive assertion of an expert. The forms and requirements of different insurers are different; and when an agent, who at the time and place is the sole representative of the principal, assumes to know what information the principal requires, and after being furnished with all the facts, drafts a paper which he declares satisfactory, induces the other party to sign it, receives and retains the premium moneys, and then delivers a contract which the other party is led to believe, and has a right to believe, gives him the indemnity for which he paid his money, we do not think the insurer can be heard in repudiation of the indemnity, on the ground of his agent's unskillfulness, carelessness, or fraud. If this can be done it is easy to see that community is at the mercy of these insurance agents, who will have little difficulty in a large proportion of the cases, in giving a worthless policy for the money they receive.

We have never seen reason to doubt the correctness of the decision in *Peoria Marine & Fire Ins. Co. v. Hall, 12*

*Mich.*, *203*, the principle of which governs the present case. Without undertaking to say that the answer to the ninth interrogatory as above given can be declared untrue, we think if it is so, and the policy for that reason, according to its terms, made void at its delivery, the agent, who had knowledge of all the facts, was chargeable also with knowledge of this invalidity; that the insurers are also chargeable with the knowledge possessed by their agent, and that consequently it was a fraud on their part to receive the premium moneys and deliver the policy without intending it should have effect under such circumstances. Such a fraud the law will not permit to be consummated; but on the contrary it will hold that when they delivered the policy it was with the intention that it should take effect, and that the insured should have the benefit from it for which he paid; and if there was any error or ambiguity in the application which their agent prepared, they must be held, under the circumstances here appearing, to have waived it.

The judgment must be affirmed.

The other Justices concurred.