HARPER v. MICHIGAN MUTUAL TORNADO, CYCLONE &
WINDSTORM INSURANCE CO.

INSURANCE—MUTUAL ASSURANCE COMPANIES—CYCLONE POLICY—
ASSIGNMENT OF RIGHTS — DESTRUCTION OF SUBJECT MATTER OF
CONTRACT.

Where plaintiff purchased property that was insured by a
policy in a mutual tornado and cyclone insurance corpora-
tion, and the insurer's charter and by-laws provided that the
insurance of any member should cease upon the sale of the
insured property, and that the company should not insure
old or dilapidated structures or buildings not on a secure
foundation, provision being made also for assignment of
policies with the approval of the secretary of the insurer,
plaintiff could not recover for a loss occurring after the
transfer of title and before he had secured the approval of
the secretary to an assignment: he did not become a member
of defendant corporation by the assignment of the policy;
nor did the approval of the secretary indorsed on the policy
after notice of the loss effect a transfer of the insurable in-
terest, since the secretary had no authority after destruction
of the insured property to consent to the assignment.

Error to Shiawassee; Miner, J.   Submitted November
21, 1912.   (Docket No. 163.)   Decided December 17,
1912.

Assumpsit by Guy Harper against the Michigan Torna-
do, Cyclone & Windstorm Insurance Company on a
policy of insurance.   Judgment for plaintiff.   Defendant
brings error.   Reversed; new trial denied.

A. L. Chandler, George E. Pardee, and Thomas
Sullivan, for appellant.

Seth Q. Pulver, for appellee.

On January 17, 1908, defendant issued one of its policies
to Charles and Isabell Brown, who on that day, according
to the terms of the policy, became members of the defend-
ant organization.   The policy was in the sum of $1,500,

and covered a store building in the city of Owosso. On October 27, 1911, the Browns sold the insured property to plaintiff. The policy, which was introduced in evidence upon the trial, shows that it was assigned and transferred to plaintiff on November 8, 1911. Underneath said assignment indorsed upon the back of the policy appears the following:

"The above transfer is hereby approved. Hastings, Mich. November 18, 1911. D. W. Rogers, Secretary."

The insured building was destroyed by a cyclone on November 11, 1911, just one week prior to the date upon which the secretary indorsed his approval of the assignment. It was the claim of plaintiff that on November 14, 1911, three days after the property was destroyed, he wrote a letter to defendant in which he advised defendant that he had bought the property, that it had been destroyed or damaged, and inquiring whether he "should hold the policy until they came or further instructions as to what to do with it." The receipt of any such letter is denied by defendant. On November 15, 1911, defendant's secretary wrote plaintiff as follows:

> "HASTINGS, MICHIGAN.
> "Nov. 15th, 1911.
>
> "Dear Sir:
> "Mail me the policy in accordance with Sec. 14 of the charter.
>
> "Respectfully yours,
> "D. W. Rogers,
> "Secretary."

To this letter plaintiff replied:

> "LAINGSBURG, MICHIGAN,
> 11–16–11
>
> "Mr. D. W. ROGERS,
> "Mutual Insurance Company,
> "Hastings, Michigan.
>
> "Dear Sir:
> "Your card received, but not until after I had written again. Inclosed is the policy with one dollar covering fee. Awaiting your consideration I am,
> "Yours very truly."

This letter with the policy was mailed on the 16th or 17th, and was acted upon by defendant's secretary on the 18th, and the policy was returned to plaintiff. Plaintiff thereafter made a demand upon defendant for settlement of his loss under the policy. This being denied, he brought suit.

The charter and by-laws of the defendant company are a part of and are printed in each policy. Pertinent provisions of the charter follow:

"Sec. 14. Any member of this company may, upon application to the secretary, and paying a fee of one dollar, sell or sign his policy of insurance, such assignment to be approved by the secretary on the policy so assigned.

"Sec. 15. The insurance of any member shall cease upon the sale of his, her or their property insured, but, he, she or they shall be holden for all assessments, until his, her or their policy shall be legally withdrawn and canceled, and the membership terminated."

One section of the by-laws only is important in this controversy:

"Sec. 3. This company shall not insure against the destruction or damage to hay or grain in stacks, windmills, old dilapidated buildings, buildings not on solid and secure foundations, nor buildings not enclosed, but shall not be construed to exclude porches on dwelling houses."

At the close of the proofs, defendant moved for a directed verdict. This motion was denied, and the court charged the jury in part as follows:

"If the secretary at the time he made the transfer on the 18th day of November, and at the time that he wrote this postal card (Exhibit E) November 15th, 1911, 'Mail me the policy in accordance with section 14 of the charter,' if at that time he understood all the facts in connection with the transfer of the property to plaintiff, if at that time he knew that there had been a tornado which had destroyed the property, and if at that time he mailed this postal card asking for the return of the policy, and upon the return of the policy received one dollar and kept that

one dollar for the use and benefit of the company, and signed it on the 18th day of November, 1911, and then returned the policy to the plaintiff, then and in such case he would have waived any forfeiture which may have previously happened on account of his not having indorsed that policy previous to the windstorm.    *    *    *

"Now, the question for you to determine, the principal question in this case, is, did the plaintiff in this case give the defendant's secretary full knowledge of all the facts previous to the 18th day of November, the time when he signed this policy? Did the secretary have that full knowledge of all the facts? If he did, then the plaintiff is entitled to recover in this case. If he did not, the plaintiff is not entitled to recover."

The jury returned a verdict in favor of plaintiff for the full amount of the policy. A motion for a new trial was made by defendant, one of the reasons for which was that the verdict was against the weight of evidence.

BROOKE, J. (*after stating the facts*).    While the evidence that plaintiff gave notice to defendant of the destruction of the building before defendant's approval of the assignment was indorsed upon the policy is not to us convincing, we find it unnecessary to determine that the verdict based upon that finding is against the weight of the evidence.   We will assume that on November 18th, when the secretary indorsed his approval of the assignment, he knew that the building had been destroyed, and that he intended by his act to receive the policy so as to make it cover a loss that had already occurred.   It is clear that under section 15 of the charter the insurance under this policy ceased upon October 27, 1911, the day of the sale from the Browns to plaintiff.   Section 14 provides how the insurance may be assigned.   The approval of the secretary is made a prerequisite.   Assuming that plaintiff secured the signature of the Browns to the assignment on November 8th, that act did not make him a member of defendant company.   So that on the 11th, when the loss occurred, plaintiff was an utter stranger to defendant. No contractual relations whatever existed between the

parties at that time.   On the 18th, when, by virtue of the approval of the assignment, plaintiff for the first time became a member of the defendant organization, liable for its assessments and entitled to its benefits, he had no building to insure.   Baldly stated, plaintiff's proposition is this:   That, after his building was destroyed, he could effect an insurance upon it through the wrongful act of the secretary.   This is not a case of waiver, and is not governed by the rules laid down in the many cases cited by plaintiff.   It is a case where, if plaintiff's contention could prevail, defendant's secretary would be permitted to take $1,500 from the members of this defendant organization and present it to plaintiff.   This is not insurance. It is vicarious philanthropy.

Section 3 of the by-laws forbids the defendant from insuring buildings not on a solid and secure foundation. At the time the insurance was effected (in plaintiff's interest), the building was in ruins as shown by the exhibits. But it is unnecessary to have recourse to the policy. Public policy forbids the holding that the agent or officer of an insurance company possesses any such power.   As well might it be claimed that, after a building had been destroyed by fire, the owner thereof could, after acquainting the agent with the fact, secure a policy which would cover his loss, upon the theory that the insurance company had waived the existence of the building because the agent knew it was already burned.   While the citation of authorities upon so obvious a question is unnecessary, we refer to a recent exhaustive decision of this court, *Kamm & Schellinger Brewing Co.* v. *Insurance Co.*, 168 Mich. 606 (134 N. W. 999), where Mr. Justice Stone defines the reciprocal rights and duties of members of mutual insurance companies and reviews the authorities.

Judgment is reversed, and there will be no new trial.

Moore, C. J., and Steere, McAlvay, Kuhn, Stone, Ostrander, and Bird, JJ., concurred.