LEONARD v. FARMERS' MUTUAL FIRE INSURANCE CO.
OF MONROE AND WAYNE COUNTIES.

1. INSURANCE—MUTUAL FIRE INSURANCE COMPANY—CONSTRUCTION OF CHARTER.

The provisions of the charter of a mutual fire insurance company will be strictly construed against the company, where it is seeking to take advantage of them to defeat a claim.

2. SAME — APPLICATION — PROVISIONS OF CHARTER — INFERENCE — QUESTION OF FACT.

Although it may be conceded that by inference defendant's charter required a written application, yet in the absence of a provision strictly forbidding parol applications, plaintiff's claim of a parol application and its ac-

ceptance by defendant's agent should be submitted to the jury.[1]

3. SAME—CONTRACT—WAIVER BY OFFICERS—ASSIGNMENT.

The charter and by-laws of a mutual fire insurance company, being part of the contract of insurance, the officers of the company cannot waive compliance with their provisions; and where no written assent was indorsed on the policy by the officers, as required by the charter, no valid assignment of the same was made to the plaintiff.

4. APPEAL AND ERROR—FIRE INSURANCE—CONTROLLING QUESTION.

Where plaintiff's claim was based on two theories, one that an application for a new policy was made and accepted, and the other that an assignment of an old policy was made to plaintiff, and both theories were submitted to the jury, and it is conceded, on appeal, that no valid assignment was made, a judgment for plaintiff will be reversed, as the appellate court is unable to determine that the verdict was based upon the question properly submitted.

Error to Monroe; Chester, J., presiding. Submitted January 2, 1916. (Docket No. 142.) Decided July 21, 1916.

Assumpsit by Moses Leonard and another against the Farmers' Mutual Fire Insurance Company of Monroe and Wayne Counties, on a fire insurance policy. Judgment for plaintiff. Defendant brings error. Reversed.

*Thornton Dixon,* for appellant.
*Willis Baldwin,* for appellees.

KUHN, J. The defendant is a mutual fire insurance company, organized under the laws of the State governing the creation of such mutual corporations, and attached to the policies issued by it is a copy of its charter. Various of the charter provisions which are of importance in this litigation are as follows:

---

[1] As to validity of oral contract of fire insurance, generally, see note in 22 L. R. A. 768.

"SEC. 15. Any person may become a member of this company by paying a membership fee of one dollar, together with ten cents on each hundred dollars they insure."

"SEC. 18. Any member may, upon sale of his property, transfer his policy to the purchaser, by paying a fee of one dollar and obtaining the consent of the president and secretary thereto, which must be indorsed. on said policy."

"SEC. 20. All applications for insurance must be made to the secretary or his agent, and contain such statements in regard to the risk of the property insured as the board of directors may deem proper to embody in the application."

The plaintiff owned a small farm in the township of Erie, Monroe county, Mich., and has for a number of years carried a policy in the defendant company covering both his buildings and his personal property. Dennis Knaggs was also a resident of the township of Erie, and owned a farm upon which he for a number of years carried a policy in the defendant company, covering $400 on his buildings and $1,400 on his personal property. Some years previous to the occurrence which gave rise to this litigation, Mr. Knaggs left his farm in Erie township and moved into another township in Monroe county, carrying with him his personal property. He had his policy changed to allow insurance on the building to remain as originally written, and his policy on the personal property to apply in the township where he was then a resident. The plaintiff sold his farm to one Dwyer, and agreed with him to have his insurance policy transferred to Dwyer, as Dwyer desired to take the same amount of insurance upon the personal property that the plaintiff carried. The plaintiff then purchased the Knaggs farm and bargained with Knaggs to have the insurance upon the building on the Knaggs farm transferred to him. On March 12, 1912, the plaintiff and his wife, Knaggs and his wife, and Dwyer went to

the office of Mr. Hilton, in the village of Erie, to have the necessary conveyances made to cover the sales and purchases of the property. Mr. Hilton, who is a secretary of the defendant company, was a notary public, and did considerable conveyancing in the community in which he resided. The necessary papers to transfer the various properties were made and executed, and Leonard then transferred his policy of insurance to Dwyer. But upon Knaggs making a similar request regarding the transferring of his policy to Leonard, Mr. Hilton called his attention to the fact that his policy only covered $400 on buildings and $1,400 on personal property then located elsewhere, and suggested that Mr. Knaggs retain his policy, cancel the insurance on the buildings, and that Leonard take a new policy. There was some dispute as to what occurred in Mr. Hilton's office, but Knaggs testified:

"I agreed to assign my policy to him (plaintiff) ; I was to pay the expense of transferring the policy. * * * Mr. Hilton said he would fix it up and send my policy to me and make a new one for Mr. Leonard; that is what I understood; as soon as possible. About the new policy, I said I would pay for it, all that was coming. * * * I explained to Mr. Hilton my bargain with Mose about paying for the insurance; that I would pay for the new one, and he would make it. That is all I understood."

On cross-examination he further said:

"When I sold the property to Leonard I told Mr. Hilton to transfer this policy to him on the house, and he said he would make a new policy and return this to me by mail (meaning Knaggs' own policy), and he returned it about three days afterward. * * * I was to pay for Leonard's new policy. I did—$1, I think."

Hilton testified that Knaggs did not pay him for insuring Leonard's property, and that he told Mr. Leonard that he would have to have a new application

and policy, and that he would fix it up any time Leonard came in.   Mr. Hilton did not finish the business, being compelled to leave his office, and upon his return he transferred Leonard's insurance to Dwyer, canceled the insurance on the buildings on Knaggs' policy, and returned the policy covering the personal property to Mr. Knaggs.   No policy was ever issued on Knaggs' property purchased by the plaintiff, and on September 12, 1912, the buildings were destroyed by fire and were a total loss.   This suit was brought against the defendant to recover upon what is alleged to be a contract of insurance made by Mr. Hilton at the time the deed was passed, and upon which contract for insurance the company should have issued its policy.   The trial resulted in a verdict for the plaintiff in the sum of $400, and judgment was duly rendered thereon.

Error is alleged because the learned trial judge, in his charge to the jury, said:

' "Gentlemen, you are instructed that if you find by a preponderance of the evidence that at the time of the transfer of this real estate from Mr. Knaggs to Mr. and Mrs. Leonard, Mr. Knaggs agreed with Mr. and Mrs. Leonard to transfer to them his insurance on the property, and to that end agreed and arranged with Mr. Hilton, secretary of the company, to transfer the insurance, either by assignment of the old policy or the issuance of a new one, and paid Mr. Hilton for such transfer, and Mr. Hilton then and there, for the company, accepted the money therefor, and further said to them at that time that that was all they had to do, and that Mr. Leonard need not do anything more and need not come back again to get his policy issued, then plaintiff would be entitled to recover."

Counsel for the defendant contends that section 20 of the charter above set forth requires that a written application of insurance should be made, and this construction of the charter contended for not having been complied with, the plaintiff cannot have any claim

on the theory that a new policy was issued; and that clearly no contention can be made upon any claim because of the right to have a transfer of the policy made, because section 18 of the charter provides that no such transfer can be made without obtaining the consent of the president and secretary thereto, which must be indorsed on the policy. This it is conceded was not done in the instant case.

It may be said that, upon reading section 20, the conclusion is justifiable that by inference, at least, it was the intention of the framers of the charter to require a written application. But it would have been a very simple and easy matter to have said so in words, so as to leave nothing to implication. In our opinion such a provision should be strictly construed against the insurer when it is sought to be taken advantage of to defeat a claim such as is relied upon in the instant case, where the application was made to an authorized agent of the company and was accepted by him, and the required fee was paid. There being evidence to support these claims and no provisions in the charter expressly forbidding the acceptance of such a parol application, this theory of the case, in our opinion, was properly submitted to the jury, as an oral contract for insurance has been held to be valid and binding. *Gristock* v. *Insurance Co.*, 84 Mich. 161 (47 N. W. 549).

It was held in *Becker* v. *Insurance Co.*, 48 Mich. 610 (12 N. W. 874), and in the later case of *Kamm & Schellinger Brewing Co.* v. *Insurance Co.*, 168 Mich. 606 (134 N. W. 999), that the charter and by-laws of a mutual insurance company are parts of the contract of insurance, and that the officers of the company cannot waive any of the provisions of the charter or the by-laws. Under these authorities, the plaintiff's counsel concedes that section 18 of the charter, with reference to the transferring of policies, is binding

upon the plaintiff. So that it appears clearly that the plaintiff was not entitled to recover on the theory that there had been an assignment of the old policy to him.

It will be noticed on reading the section of the charge above set forth that both of these theories were submitted to the jury, and it is of course impossible to tell upon which theory the jury determined that the defendant was liable. Under the facts here set forth, the defendant was entitled to an instructed verdict upon the theory of the assignment of the policy, but as we have intimated, the question of a new contract of insurance was one which it was proper to submit to the jury.

Being therefore unable to determine whether the jury decided the question of whether or not an oral contract for new insurance was made, we conclude that the error in the judge's charge must be said to be prejudicial.

The judgment is therefore reversed and a new trial granted.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.