WILSON *v.* LIVINGSTON COUNTY MUTUAL FIRE INS. CO.

1. INSURANCE—REFORMATION OF INSTRUMENTS—MUTUAL MISTAKE—
   BURDEN OF PROOF.

   Where insured sustained burden of proof to establish that fire
   insurance policy written by defendant insurer, by mutual mis-
   take, omitted from its provisions contents of large barn in-
   sured by another company, insured is entitled to have policy
   reformed to include said contents.

2. PRINCIPAL AND AGENT—POWERS OF AGENT.

   Powers of agent are *prima facie* coextensive with business in-
   trusted to his care.

3. INSURANCE—MUTUAL INSURANCE COMPANIES—WAIVER BY SECRE-
   TARY—PRINCIPAL AND AGENT.

   Generally, charter and by-laws of mutual fire insurance company
   are part of contract of insurance, and company's secretary may
   not waive any of their provisions.

4. SAME—MUTUAL MISTAKE—ESTOPPEL.

   Where secretary of mutual fire insurance company was author-
   ized to receive applications for insurance, write and issue
   policies, deliver same, and collect premium, and he prepared
   policy which both he and insured thought covered contents of
   large barn which was insured by another, but which by mistake
   were omitted from policy, although premium paid was suffi-
   cient to cover same, company may not evade liability on ground
   that insured, by accepting policy as written, is estopped from
   claiming otherwise.

Appeal from Wayne; Collins (Joseph H.), J., pre-
siding. Submitted April 21, 1932. (Docket No. 58,
Calendar No. 36,397.) Decided June 6, 1932.

Bill by Charles L. Wilson and another against
Livingston County Mutual Fire Insurance Com-
pany, a Michigan corporation, to reform an insur-

ance policy. Bill dismissed. Plaintiffs appeal. Reversed.

*Yerkes, Goddard, McClintock & Shreve* and *Shields & Smith,* for plaintiffs.

*Don W. Van Winkle,* for defendant.

POTTER, J. Plaintiffs filed their bill of complaint against defendant to reform an insurance policy issued by defendant so as to show the true intent of the parties to cover the personal property contained in all the buildings on plaintiffs' farm. From decree for defendant, plaintiffs appeal.

Plaintiffs owned and operated a large dairy farm in Livingston county, upon which were several farm buildings and considerable personal property. Desiring to insure the buildings and personal property on the farm, C. L. Wilson, one of plaintiffs, went to Howell and called on L. H. Crandall, with whom he was acquainted. Crandall went with Wilson to see Borden, secretary of defendant company, where the question of insurance was discussed with Borden. Plaintiffs wanted insurance upon the buildings and personal property on the farm; full coverage; and desired to have Borden visit the property and issue a policy sufficient to protect them. Borden thought defendant might be able to insure all the property except the large dairy barn upon the premises. Borden suggested he get in touch with another insurance company in Lansing, of which he was an agent, and see if it would handle the large building and contents. He got the other company to carry the building, and defendant insured the smaller buildings and contents and the personal property. The real dispute here is over the con-

tents of the large barn. Plaintiff Charles L. Wilson says Borden wanted to carry all the smaller buildings and all the contents and have the other insurance company carry the big barn. Borden suggested splitting the insurance between the two companies. Plaintiff Charles L. Wilson talked with no one except Borden. The matter of procuring insurance in accordance with the agreement between Charles L. Wilson and Borden was left to Borden, who procured the issuance of two insurance policies which he delivered to plaintiffs. After the verbal application for insurance was made by Charles L. Wilson to Borden, Borden and a Mr. Moore went over the property to be insured, through the large dairy barn, and Borden said he could not carry the big barn, but defendant would like to carry its contents. George J. MaDan, connected with the Harvest Mutual Insurance Company which wrote the policy on the big barn, was told by Borden his directors had agreed to take care of the personal property if MaDan's company would write a policy covering the buildings. It was talked over between Borden and MaDan that Borden's company, defendant, was to carry the personal property and MaDan's company was to carry the big barn. The only property discussed between Borden and MaDan was the big barn and contents. Mr. Crandall went with Borden and Charles L. Wilson to the farm to look over the property to be insured. He testified:

"Mr. Borden stated that he could carry the smaller buildings or the buildings that were adjacent to this larger risk, and the personal property, but he would be unable to carry the other. It was left he would insure what he could carry and what he couldn't would be carried in the Lansing company."

Defendant's secretary, Borden, admits Wilson came in to get insurance covering all the insurable property on the farm. Wilson wanted defendant to insure all the property because it was a local insurance company and plaintiffs were owners of a large farm in Livingston county. It was Borden's suggestion defendant could not carry the insurance on the big barn. It was Borden's suggestion he get some other company to carry the insurance on the big barn and defendant would carry insurance on the smaller buildings and contents. Borden handled the entire matter of insurance and intended to insure the personal property in question; and, until a loss occurred, and the question arose, he thought he had done as he intended to do. He testified:

"*Q.* I am asking you, did you or would you do with any business man when he came to you to get coverage of insurance, would you deliver these policies to him without knowing whether he got it or not? That is what I am getting at.

"*A.* I evidently did.

"*Q.* At that time you thought he was protected and covered?

"*A.* Yes, sir, I thought he was.

"*Q.* You thought so up to the time this controversy arose?

"*A.* Yes, sir.

"*Q.* That is what you took his money for?

"*A.* Yes, sir."

The policy provides "on personal property in said buildings or in sacks or stacks on said premises $10,000. Personal property also insured in buildings and on premises owned and insured by Enoch H. Henry, section No. 8, township of Howell." The sentence, or part of a sentence, "Personal property also insured in buildings and on premises owned and insured by Enoch H. Henry, section No. 8,

township of Howell," is written in by typewriter. No amount of insurance is placed opposite that sentence or part of sentence. Borden admits the $10,000 item on personal property was intended to be a blanket item covering all personal property on the premises insured. The policy, by its terms, covers personal property in the buildings, only, insured by defendant. The typewritten part of the policy covers personal property not in the buildings insured by the policy. The personal property in the big barn was not covered by the precise language of the policy. It was intended both by Wilson and Borden to have been covered. The fact it was not covered was a mistake upon the part of both parties. Plaintiffs have sustained the burden of proof upon the proposition of establishing a mutual mistake, and are entitled to relief unless barred by some legal defense.

Borden, secretary of defendant, was its agent. The powers of an agent are *prima facie* coextensive with the business intrusted to his care. *Union Mutual Life Ins. Co.* v. *Wilkinson,* 13 Wall. (U. S.) 222; *Tubbs* v. *Dwelling-House Ins. Co.,* 84 Mich. 646. He was authorized to receive applications for insurance in defendant, write and issue policies therein, deliver the same, and collect the premium therefor. Application was made for insurance on all the insurable property on the farm. He visited the farm and examined the property. He told plaintiffs defendant could not carry the policy on the big barn. He suggested that he procure coverage of the barn by another company. He was agent of that company. Nothing was concealed from him. There is no claim of over insurance. He assumed to handle the placing of the insurance desired. Without the coverage claimed on the contents of the big barn,

there is no reasonable explanation of the item of $10,000 on personal property. He prepared the policy of defendant. He delivered both policies to plaintiffs. He intended to cover the property in controversy by defendant's policy. Plaintiffs supposed the policies delivered covered it. Borden charged for and collected the premium on the coverage. If either plaintiffs or defendant had not believed defendant's policy covered the property in controversy, plaintiffs could have procured coverage elsewhere.

As said in *Ætna L. S., F. & T. Ins. Co.* v. *Olmstead,* 21 Mich. 246 (4 Am. Rep. 483):

"If the application is not in due form, and if it fails to give all the information called for, it must be either because the agent was too ignorant of the business to be properly intrusted with the agency, or because he was so negligent or reckless that he did not trouble himself to draft them correctly, or lastly, because he was disposed to take Olmstead's money on the fraudulent pretense of giving him indemnity when he knew he was giving none whatever.

"The general rule undoubtedly is, that in the absence of fraud, accident or mistake, a party must be conclusively presumed to understand the force of his contracts, and to be bound by their terms. But it cannot be tolerated that one party shall draft the contract for the other, and receive the consideration, and then repudiate his obligation on the ground that he had induced the other party to sign an untrue representation which was, by the very terms of the contract, to render it void. Still less can this be allowed when the representation itself is so ambiguously worded as to be well calculated to conceal its real meaning, and to deceive the party signing it."

The principles above stated have been repeatedly approved. *Westchester Fire Ins. Co.* v. *Earle,* 33 Mich. 143; *Michigan Mutual Life Ins. Co.* v. *Reed,* 84 Mich. 524 (13 L. R. A. 349); *Tubbs* v. *Dwelling-House Ins. Co., supra; Beebe* v. *Ohio Farmers' Ins. Co.,* 93 Mich. 514 (18 L. R. A. 481, 32 Am. St. Rep. 519). It is contended the charter and by-laws of defendant, a mutual fire insurance company, are a part of the contract of insurance, and Borden, defendant's secretary, could not waive any of their provisions. *Becker* v. *Farmers' Mutual Fire Ins. Co.,* 48 Mich. 610; *Kamm & Schellinger Brewing Co.* v. *St. Joseph County Village Ins. Co.,* 168 Mich. 606; *Leonard* v. *Farmers' Mutual Fire Ins. Co.,* 192 Mich. 230. This is the general rule.

Relief in cases of this kind is based upon other grounds:

"The insurance business of the world is done through agents almost exclusively, and the maxim *qui facit per alium facit per se* applies with special force to their acts. These agents assume to have, and generally do have, much more intimate knowledge of the business than those with whom they deal. They may also be fairly presumed to understand the requirements of their principals, and how properly and legally to fill up the blank applications and other papers with which their principals intrust them. The community in general do not assume to be familiar with these matters, and would not venture in any case to set up their own view of what was or was not the proper form of an application, against the positive assertion of an expert. The forms and requirements of different insurers are different, and when an agent, who at the time and place is the sole representative of the principal, assumes to know what information the principal requires, and after being furnished with all

the facts, drafts a paper which he declares satisfactory, induces the other party to sign it, receives and retains the premium moneys, and then delivers a contract which the other party is led to believe, and has a right to believe, gives him the indemnity for which he paid his money, we do not think the insurer can be heard in repudiation of the indemnity on the ground of his agent's unskillfulness, carelessness or fraud. If this can be done it is easy to see that community is at the mercy of these insurance agents, who will have little difficulty in a large proportion of the cases, in giving a worthless policy for the money they receive." *Ætna L. S., F. & T. Ins. Co.* v. *Olmstead, supra.*

In *Westchester Fire Insurance Co.* v. *Earle, supra,* 151, it is said:

"It has been more than once held by this court, that where an agent in giving a policy has, by his own conduct, misled parties into making applications or accepting conditions under a misapprehension as to their literal accuracy, the company is estopped by his action."

In *Beebe* v. *Ohio Farmers' Ins. Co., supra,* 522, 523, the court considered the applicability of a by-law prohibiting any waiver by an agent of an insurance company. It is said:

"The agent had the right, under the policy, to grant permission to place other chattel mortgages upon the property, but was required to write such permission upon the policy. He granted the permission, took an active part in procuring the money upon the mortgages, advised in regard to it, and assured the plaintiff that she was protected, though he did not enter in writing upon the policy the permission to do so. With the power vested in him by the company to issue policies, we think it would be a gross fraud upon the insured to hold that this

condition was not waived by the consent of the company.''

It is claimed that Borden had no power and authority to write or issue a policy of insurance in defendant as claimed by plaintiffs, and plaintiffs, by accepting the policy applied for, are estopped from claiming otherwise.

''The company sought to protect itself from unauthorized acts of its agents by virtually declaring in what respect their powers were limited, and giving the plaintiff full notice thereof in the policy. He is estopped by accepting the policy from setting up in this case powers in the agent at that time in opposition to the limitation of the conditions.'' *Catoir* v. *American Life Ins. & Trust Co.*, 33 N. J. Law, 487.

''When the policy itself contains an express limitation upon the power of agents, an agent has no legal right to contract as agent of the company, with the party to whom the policy has been issued so as to change the terms of the policy or dispense with the performance of any part of the consideration, either by parol or in writing; and such party is estopped, by accepting the policy, from setting up powers in the agent, at the time, in opposition to limitations and conditions in the policy.'' *Merserau* v. *Phœnix Mutual Life Ins. Co.*, 66 N. Y. 274.

The rule of the cases last above quoted was expressly approved in *Cleaver* v. *Traders' Ins. Co.*, 65 Mich. 527 (8 Am. St. Rep. 908), where it is said:

''When the policy of insurance, as in this case, contains an express limitation upon the power of the agent, such agent has no legal right to contract as agent of the company with the insured, so as to change the conditions of the policy, so as to dispense with the performance of any essential requisite contained therein, either by parol or writing; and the

holder of the policy is estopped, by accepting the policy from setting up or relying upon powers in the agent in opposition to the limitations and restrictions in the policy."

Defendant insured plaintiffs "according to the tenor, terms and conditions of the charter and by-laws." The charter provides for insurance on "contents of said buildings" and specific personal property "being upon the premises of the insured and belonging to members." The secretary is to "countersign and issue all policies in conformity with the charter and by-laws. * * * On acceptance and approval of such proposal for insurance a policy of insurance shall be issued. * * * All propositions or agreements for insurance shall be subject to the approval or rejection by the president or secretary." The by-laws provide: "A single policy of insurance shall not cover personal property on premises other than those described in said policy." The policy is fairly open to the construction that the $10,000 item on personal property covered the personal property on the Henry farm.

No doubt the proposition to insure this personal property was approved by the secretary. The policy makes propositions for insurance subject to the approval or rejection by defendant's secretary. Personal property not in the buildings insured by the policy issued to plaintiffs was covered by the terms of the policy in question. Other personal property was intended to be covered. Plaintiffs paid and defendant received the insurance premium on such insurance. We think plaintiffs entitled to the relief prayed.

Reversed, with costs, and decree will be entered for plaintiffs.

CLARK, C. J., and MCDONALD, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.