EQUITABLE TRUST CO. v. EASTERN MICHIGAN FARMERS'
MUTUAL FIRE INSURANCE CO.

1. INSURANCE—CONTRACTS—FARMERS' MUTUAL FIRE COMPANY—
PRINCIPAL AND AGENT.

In suit between property owner and farmers' mutual fire in-
surance company for specific performance of alleged contract
to issue fire insurance policy covering farm buildings, if it
be found there was a concurrence of mutual undertakings by
the parties through agents authorized to bind their principals
and that such concurrence was manifested before fire started,
the fire loss would shift to the insurer; but if the negotiations
between the agents were merely preliminary to a concurrence
to take place *in futuro*, the loss would be that of the owner (3
Comp. Laws 1929, § 12593).

2. SAME—FARMERS' MUTUAL FIRE COMPANY—BYLAWS—CHARTER—
CONTRACTS.

The bylaws and charter of a farmers' mutual fire insurance
company become a part of the contract of insurance where
they are referred to both in the application for membership
and the policy (3 Comp. Laws 1929, § 12593).

3. SAME—FARMERS' MUTUAL FIRE COMPANY—BYLAWS—CHARTER—
CONTRACT—COMPLIANCE WITH CONDITIONS—MEMBERSHIP.

Compliance with conditions precedent to membership, prescribed
in bylaws and charter of farmers' mutual fire insurance
company, is essential to establish a binding contract of in-
surance between the company and the applicant (3 Comp.
Laws 1929, § 12593).

4. SAME—FARMERS' MUTUAL FIRE COMPANY—MEMBERSHIP—ESTOP-
PEL.

Membership in a farmers' mutual fire insurance company can-
not be acquired by estoppel (3 Comp. Laws 1929, § 12593).

5. SAME—BYLAWS OF FARMERS' MUTUAL FIRE COMPANY—CONTRACTS
—PAYMENT OF PREMIUM—OFFICERS.

When bylaws of a farmers' mutual fire insurance company require
that the premium shall be paid before the policy takes effect
and are of the essence of the contract between the company

and the applicant, no officer has the power to bind the company by an agreement that, notwithstanding the non-payment of premium, the policy shall be effective (3 Comp. Laws 1929, § 12593).

6. SAME—FARMERS' MUTUAL FIRE COMPANY—APPROVAL OF SECRE-TARY—PAYMENT OF PREMIUM.

Applicant for fire insurance with farmers' mutual fire insurance company who secured approval of secretary of the company of his application for membership but failed to pay premium before occurrence of fire loss may not recover therefor where bylaws and charter provided that policy would not be effective before payment of the premium and both the bylaws and charter were referred to in the application and policy notwithstanding consideration clause of application used term "afforded" rather than "to be afforded," indicating it was operative *in praesenti* rather than *in futuro*.

Appeal from Wayne; Callender (Sherman D.), J. Submitted October 17, 1940. (Docket No. 102, Calendar No. 41,294.) Decided February 7, 1941.

Bill by Equitable Trust Company, a corporation, and John H. Brabb, trustees of the estate of Marvil I. Brabb, deceased, against Eastern Michigan Farmers' Mutual Fire Insurance Company, a corporation, for specific performance of a contract to issue a fire insurance policy and for incidental money relief. From decree for plaintiffs, defendant appeals. Reversed.

*Lawson & Giles* (*William B. Giles,* of counsel), for plaintiffs.

*Jewel E. West* and *Frank T. Hinks,* for defendant.

BUTZEL, J. This is an action for specific performance of a contract to issue a fire insurance policy and for incidental money relief. The trial court entered a decree in accordance with the prayer of the bill, and defendant appeals.

Plaintiffs are testamentary trustees of the Marvil I. Brabb farm which is located in Armada township, Macomb county. Defendant is a mutual fire insurance company organized under 3 Comp. Laws 1929, § 12593 * (Stat. Ann. § 24.443). Plaintiffs desired to obtain fire-insurance coverage on the property, and there is testimony in the record that they authorized a Mr. Theodore H. Kloeffler, a real-estate man at Armada, to arrange for the insurance. He called at defendant's Romeo office on November 7, 1938, and informed Mr. Priest, defendant's secretary and general manager, that he desired to obtain prompt coverage. Mr. Priest went out to the farm on November 9th and examined and appraised the buildings. From conflicting evidence, the trial court found that Mr. Kloeffler went to the office of defendant some time after noon on November 10th and signed and executed an application for fire insurance which Mr. Priest prepared in his presence and which Mr. Priest then and there accepted on behalf of defendant. The trial court further found that the application was executed not later than 3:15 p. m., and that the fire which destroyed most of the farm buildings started at approximately 3:45 p. m. that afternoon. There is no claim of fraud of any kind. The only question is whether the defendant company became liable.

After the application was made out and the amount of premium computed, Mr. Kloeffler told Mr. Priest that he did not have the money for the premium with him, but that the policy should be sent to plaintiff Equitable Trust Company, or to him, with a bill, and that it would be honored promptly. Mr. Kloeffler testified that Mr. Priest stated that it would take a "couple of days" to "get

---

* Later amended by Act No. 132, Pub. Acts 1933; Act No. 3, Pub. Acts 1938 (Ex. Sess.); and Act No. 185, Pub. Acts 1939.—Reporter.

the policy set up," and that it would be mailed. Nothing was said as to when the insurance was to go into effect. Mr. Priest's version is that he offered to make out the policy immediately so that Mr. Kloeffler could take it with him if he cared to wait, but that the latter stated he could not wait. Mr. Priest was informed the next morning that the property sought to be covered had been destroyed; he then denied that the policy was ever in effect and destroyed the application. The form of application used states:

"The undersigned * * * hereby agrees, in consideration of the protection afforded by this company, that he will faithfully abide by the regulations of the company, as contained in their charter and bylaws, and will pay his just and equitable assessment within 30 days from date of notice. It is further agreed that in default of payment of such assessment, that said assessment and the pro rata share of all indebtedness of the company shall be a lien against the property of the applicant."

Section 1 of the bylaws prescribes how membership in the association may be acquired:

"Membership in this company shall be consummated by written application duly signed by the applicant, and approved by the secretary and the payment of such fees, premiums and assessments which may be established from time to time by the board of directors. * * * The application shall not be binding upon the company until the charges established by the board of directors have been paid and the application approved by the secretary. A note accepted as payment of such charges or for subsequent premiums or assessments, shall be considered as payment."

There is no claim that Mr. Kloeffler actually knew the substance of this section of the bylaws or that it

was called to his attention at the time the application was accepted.

Plaintiffs contend, and the trial court so found, that defendant's secretary, Mr. Priest, approved the application and waived prepayment of the fees and assessments before Mr. Kloeffler left defendant's office and that the insurance was therefore effective before the fire started; defendant contends that the bylaw requirement of premium prepayment prevented consummation of the contract before actual payment, and that the secretary had no authority to waive this provision, and that membership in a mutual fire insurance company cannot be acquired by estoppel. It is admitted that if the fire had not occurred as it did, the policy would have been delivered according to the arrangement.

The basic problem is one of mutual assent. If there was a concurrence of mutual undertakings by the parties through agents authorized to bind their principals, and such concurrence was manifested before the fire started, the fire loss has by the contract been shifted to defendant. But if the negotiations between Mr. Kloeffler and Mr. Priest were merely preliminary to a concurrence to take place *in futuro*, the loss must remain in the owners. *Martin v. Lincoln Mutual Casualty Co.*, 285 Mich. 646. The trial court sifted the conflicting evidence and concluded as a matter of fact and law that both agents had authority to enter into a present contract of insurance for their respective principals and did so act before the fire started. We are to review the legal aspect of the conclusions as to defendant.

We would have little difficulty in disposing of the problem before us if the defendant were an ordinary stock company. The rule in such cases seems well established that provisions of a contract requiring prepayment of premiums may be waived by the company through its officers and sometimes through

its agents. *Mallory* v. *Ohio Farmers' Insurance Co.,* 90 Mich. 112; *Lum* v. *United States Fire Insurance Co.,* 104 Mich. 397.

Plaintiff, however, seeks specific performance of an alleged contract with the Eastern Michigan Farmers' Mutual Fire Insurance Company, organized in accordance with 3 Comp. Laws 1929, § 12593 (Stat. Ann. § 24.443). Whatever may have been said to the contrary in former opinions, it must be recognized that these farmer mutual companies have but limited capital, practically no reserves, and frequently are run by men with little business experience. Prompt payment of premiums and assessments is vital to such a company's existence. We recognize that people may be careless in failing to read applications for membership or the policy itself. But where both the application and the policy refer to the bylaws and charter of the company, the bylaws and charter become a part of the contract of insurance. *Wilson* v. *Livingston County Mutual Fire Ins. Co.,* 259 Mich. 25; *Johnson* v. *State Mutual Rodded Fire Ins. Co.,* 232 Mich. 204.

Plaintiff agreed in his application that in consideration of the protection afforded by the company, he would abide by the regulations of the company as contained in the charter and bylaws. Where, as in the present case, the charter and bylaws prescribe the conditions precedent to membership, compliance is essential to establish a binding contract of insurance between the company and the applicant. This court has repeatedly held that membership in such companies cannot be acquired by estoppel. *Kinne* v. *Farmers' Mutual Fire Ins. Co.,* 241 Mich. 637; *Engel* v. *State Mutual Rodded Fire Ins. Co.,* 281 Mich. 520.

Plaintiff claims that the fact that the application used the word "afforded" instead of the words "to be afforded" indicates that the proposed coverage

was *in praesenti* rather than *in futuro*. We believe the language employed may denote a distinction, but not a difference in the present case. The bylaws of the company provided that the application should not be binding upon the company "until the charges established by the board of directors have been paid and the application approved by the secretary." The application was approved by the secretary but the charges were not paid and were rejected when tendered after the loss. Also, the policy was never issued. Thus, the rules of *Gay* v. *Farmers' Mutual Ins. Co.*, 51 Mich. 245, and *Rorick* v. *State Mutual Rodded Fire Ins. Co.*, 263 Mich. 169, are inapplicable to the facts of the present case. We have also carefully examined *Russell* v. *Detroit Mutual Fire Ins. Co.*, 80 Mich. 407; *Towle* v. *Ionia, Eaton & Barry Farmers' Mutual Fire Ins. Co.*, 91 Mich. 219; *Dailey* v. *Preferred Masonic Mutual Accident Ass'n*, 102 Mich. 289 (26 L. R. A. 171); *Improved Match Co.* v. *Michigan Mutual Fire Ins. Co.*, 122 Mich. 256; *Blake* v. *Farmers' Mutual Lightning Protected Fire Ins. Co.*, 194 Mich. 589; holding that in some instances. an officer or agent of a mutual insurance company may be held to have waived compliance with the strict letter of the charter or bylaws in order to prevent injustice.

No such compulsion of equitable principles is present in the instant case as to lead us to desert the principle enunciated in *Kamm & Schellinger Brewing Co.* v. *St. Joseph County Village Fire Ins. Co.*, 168 Mich. 606, 619:

"Nor, when the bylaws require that the premium shall be paid before the policy shall take effect, has any officer the power to bind the company by an agreement that, notwithstanding the nonpayment of the premium, the policy shall be effective."

The limitation of this rule is stated as:

"This rule is applicable only to bylaws which are of the essence of the contract."

See *Harper* v. *Michigan Mutual Tornado, Cyclone & Windstorm Ins. Co.*, 173 Mich. 459; *Leonard* v. *Farmers' Mutual Fire Ins. Co.*, 192 Mich. 230; *Crank* v. *State Mutual Rodded Fire Ins. Co.*, 239 Mich. 642; *Wilson* v. *Livingston County Mutual Fire Ins. Co., supra; Mirunczak* v. *Michigan Farmers' Mutual Fire Ins. Co.*, 293 Mich. 65.

Courts in other jurisdictions are not unanimous on the question. See discussion in *Wieland* v. *St. Louis County Farmers' Mutual Fire Ins. Co.*, 146 Minn. 255 (178 N. W. 499); 1 Couch, Cyclopedia of Insurance Law, § 113-b.

We are inclined to the view that when membership in a farmers' mutual fire insurance company is sought to be established, it is necessary for plaintiff to conform to the charter and bylaws when the application and policy are made subject to their provisions. In the present case it was necessary for plaintiff not only to secure the approval of the secretary but also to pay the charges established by the board of directors. The plaintiff failed to comply with the latter provision and therefore may not recover.

Reversed, with costs to defendant.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, McALLISTER, and WIEST, JJ., concurred.